THE STATE OF IOWA v. PLUM EVANS, Appellant.

**Assault with Intent to Commit Murder: EVIDENCE.** In a prosecution for assault with intent to commit murder, the belief of a witness that the crowd which he saw follow defendant intended to make trouble, is inadmissible.

**Same.** A defendant charged with an assault with intent to commit murder may show that just prior to the assault he was

pursued by a crowd whom he understood threatened to do him violence, and that he supposed the prosecutor belonged to the attacking party.

Same.   A witness should not be allowed to state "What the manner and temper of a crowd seemed to be."

Same.   In a criminal prosecution, the state should not be permitted on cross-examination of defendant's witness, to inquire for the first time into a collateral matter, although the facts elicited might have been proper in support of its own case.

Instructions: ASSSUMPTION OF FACTS.   Where it is conclusively shown that defendant did the shooting and that the shot took effect, the court may assume in its instruction that he shot at the person injured.

*Appeal from Monroe District Court.*—HON. M. A. ROBERTS, Judge.

FRIDAY, JANUARY 15, 1904.

THE defendant was accused of the crime of assault with intent to commit murder.   He was convicted of assault with intent to commit manslaughter, and appeals.— *Reversed.*

*N. E. Kendall* for appellant.

*Chas. W. Mullan*, Attorney General, and *C. A. Van Vleck*, Assistant Attorney General, for the State.

LADD, J.—There appears to have been a disturbance at a dance in the village of Buxton at about eleven o'clock p. m. May 23, 1902.   The defendant left, and shortly afterwards was approached by the constable, who, not being certain of his identity, inquired, "Is that you, Plum?"   To this defendant answered, "Yes; do you want me?" and, receiving an affirmative response, replied, "You can't get me.   Go on.   Go on."   He drew a revolver at the same time and, as the constable retreated shot him in the arm.   The defendant introduced evidence tending to show that after the disturbance at the dance the people dispersed and that defendant acted upon the

reasonable apprehension that a large body of men bent on taking his life or doing him great bodily harm were pursuing him and that what he did was without intention of killing Reasby or any one else but to enable him to escape from his pursuers.

I. One Williams testified that before the shooting he saw a crowd of men moving rapidly from the dancing platform toward the company store near which the shooting occurred; that many of them were drunk; and that, fearing trouble he left. He was then asked "What was there about the crowd that led you to believe there would be trouble come out of their conduct?" The objection by the state was rightly sustained. The belief of the witness and what produced it could have had no bearing on the issues being tried.

**1. EVIDENCE.**

II. One Rhodes testified that "a gang of fellows were coming right up behind me. I heard Tolliver want to know where defendant was." He then asked: "Did you notice whether he [Tolliver] had a revolver or not?" An objection that this was incompetent and immaterial was sustained. Counsel for defendant then stated that he expected "to introduce proof that Tolliver in company with quite a large crowd of men was searching for the defendant threatening to do him violence and that defendant had knowledge of this at the time of the shooting of Reasby and supposed that Reasby was that attacking party." The evidence was rejected on this statement. It should have been received as tending to show whether those in pursuit of defendant were armed and as bearing upon what he might reasonably have apprehended upon the approach of Reasby.

**2. SAME.**

Another witness was asked to "tell the jury just what the manner and temper of the crowd seemed to be." The objection as incompetent was properly sustained. The question called for a conclusion and not a statement of facts.

**3. SAME.**

III.   On direct examination Willis testified, in behalf of the defendant that he was a postoffice clerk; that he was near the lower end of the store when the shots were fired; that he saw "a crowd of men around there before Reasby came going down the line pretty rapidly"; that they said, "If we get the s——of a b——, we'll kill him;" that they were talking loud, and seemed to be angry; that this was about twenty minutes before the shooting; that he and defendant were standing on the west side of the store when this crowd passed on somewhere in front of the store.   On cross-examination the record reads:   "I was coming from home, before I got on the west side of the store, in company with defendant. We had been over to the dance.   Q.   Why did you leave the dance?   (Objected to as immaterial and not proper cross-examination.   Overruled.   Defendant excepts.)   A. Plum got into a fuss up there.   Q.   What kind of a fuss was it?   (Objected to as immaterial, irrelevant, incompetent, and not proper cross-examination.   Overruled. Defendant excepts.)   A.   Well, I wasn't right down at the platform when the fuss occurred.   Q.   Wasn't there some shooting going on there, and done by Mr. Evans, that caused you to leave the dance?   (Same objection. Overruled.)   A.   Yes, sir.   *   *   *   Did you see any shooting there?   (Substantially the same objection. Overruled.)   A.   I heard some shooting.   Q.   As soon as that shooting occurred, what became of the people that were at the dance?   Did you see them?   (Same objection. Overruled.   Defendant excepts.)   A.   Yes; they all dispersed, I suppose."   Manifestly the proper bounds of legitimate cross examination were exceeded, and a new element introduced in the trial.   As the state, in making out its case, had shown the presence of these witnesses at the shooting, there was no occasion to inquire as to their whereabouts during the evening; but, even if this were

**4.  SAME.**

proper, the state ought not to have been allowed, under this guise, to investigate another transaction in which defendant appears to have been involved. It may be that the trouble at the dance was so closely connected with the subsequent difficulty that the state might have proven the facts in making out its main case, or that this would have been proper matter for the defense; but, as neither had elected to enter that field of inquiry, the state ought not to have been permitted to do so for the first time in the improper cross-examination of defendant's witnesses. The effect was to force the defendant into an investigation of a collateral matter not touched upon by the state in making out its case, or rest under the imputation that his conduct had been so reprehensible as to cause the people gathered together for the purposes of diversion and pleasure to disperse and go to their homes. The inquiry could not have been otherwise than prejudicial.

IV. Complaint is made of the sixteenth instruction because, as is contended, it assumed that defendant shot at Reasby. The record is conclusive that he so did. True, 5. INSTRUCTION: assumption of facts. defendant says that he did not intend to kill him or any one else, but he does admit the shooting, and the shot took effect in the constable's arm. He must, then, have shot at him. Whether he did so intentionally, and, if not, whether he recklessly discharged his revolver, are other questions, and no complaint is made but that these were properly submitted to the jury. See, *State v. Bone*, 114 Iowa, 544.

For the errors pointed out, the judgment is reversed, and the cause remanded for another trial.—REVERSED.