STATE OF IOWA, Appellee, v. CHARLES WALKER, Appellant.

**CRIMINAL LAW:** Continuance—Inadequate Time to Prepare for Trial.
1 Refusal to grant defendant a continuance in order to prepare for trial will be denominated error only in case of a clear showing of abuse of discretion. Refusal sustained, where 13 days elapsed between plea and commencement of trial.

**JURY:** Jury List—Insertion of Names by Auditor. County auditors
2 have no authority to take names from the poll books of a precinct and enter them upon the jury list, in order to obviate the failure of the judges of election to return jury lists from such precinct.

**JURY:** Qualifications—Women as Qualified Jurors. The Nineteenth
3 Amendment to the Federal Constitution, providing that "the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of sex,"
    1. Automatically amended the Constitution of Iowa by striking out the word "*male*" in Art. 1, Sec. 2, which theretofore had provided that "every *male* citizen * * * shall be entitled to vote;" and
    2. Automatically caused our statutory declaration that "all qualified *electors* of the state * * * are competent jurors * * *" (Sec. 332, Code, 1897) to take on an enlarged meaning, commensurate with the enlarged scope of our automatically amended Constitution.

**CONSTITUTIONAL LAW:** Federal Prohibition in re Jury Service.
4 Principle recognized that Congress now has power to prohibit the states from excluding women from jury service in state courts on account of sex. (See *Ex Parte Virginia*, 100 U. S. 339.)

**JURY:** Jury Service Not Right or Privilege. The adoption of the
5 Federal women's suffrage amendment did not, in and of itself, impose jury service on the women of this state; but, inasmuch as such service is solely a matter of expediency with the general assembly

(in the absence of constitutional provisions), such result was brought about (1) by the adoption of said amendment, and (2) by the existence of our state statute, declaring that "all qualified *electors* * * * are competent jurors."

CONSTITUTIONAL LAW: Common-Law Jury of Men. The term "man," as employed in the constitutional declaration that "the general assembly may authorize trial by a jury of a less number than twelve *men* * * *" (Art. 1, Sec. 9), is used in its generic sense only—is not used for the purpose of declaring that a jury in this state shall be composed of male persons, as at common law. (Art. 1, Sec. 9.)

EVIDENCE: Demonstrative Evidence—Nonidentified Property. Reversible error results from receiving in evidence exhibits in the form of property which are in no wise identified, and which are not shown to be connected in any manner with the offense on trial, or with the accused.

CRIMINAL LAW: Trial—Undue Cross-Examination. Testimony by the wife of an accused that, on a night in question, her husband was at home, and left on the following morning at a stated time, may not be followed by cross-examination as to conversations between the wife and her husband at said time, which revealed that the husband had, on said evening, been with other parties, who had been arrested for the crime for which the husband was on trial.

EVANS and PRESTON, JJ., dissent.

CRIMINAL LAW: Trial—Argument—Failure of Accused to Testify. Indirect references in argument to defendant's failure to testify, coupled with declarations by the county attorney as to the defendant's guilt, reviewed, and strongly disapproved.

CRIMINAL LAW: Trial—Instructions—Different Degrees of Proof. Instructing that an essential element of an offense must be proved beyond a reasonable doubt, and later instructing that it may be proved by circumstances "*such as would fairly lead to the conclusion*" that such element was proved, constitutes reversible error.

CRIMINAL LAW: Trial—Instructions—Partial Proof Permitted. To instruct permitting the jury to convict only on proof of all of certain enumerated and essential elements, and later to instruct that a conviction may be had on proof of only a part of said elements, constitutes reversible error.

CRIMINAL LAW: Trial—Instructions—Undue Emphasis. It is not proper, in the trial of a criminal cause, for the court, in its instructions, to single out some particular fact, and give undue emphasis thereto.

*Appeal from Hamilton District Court.*—H. E. FRYE, Judge.

DECEMBER 13, 1921.

TRIAL on an indictment for the crime of breaking and enter-ing a building in the nighttime resulting in a verdict of guilty. Motion for new trial ·was overruled and judgment was entered on the verdict.  Defendant appeals.—*Reversed.*

*R. G. Remley* and *D. C. Chase,* for appellant.

*Ben J. Gibson,* Attorney General, *Neill Garrett,* Assistant Attorney General, and *E. P. Prince,* for appellee.

DE GRAFF, J.—The defendant was indicted by the grand jury of Hamilton County, Iowa on April 28th, 1921 for the crime of breaking and entering a building on the night of March 18, 1921.  A plea of not guilty was entered to said indictment on the 3rd day of May, 1921.  Trial was had thereon commenc-ing on the 16th day of May 1921.

1.  On the 9th day of May 1921 defendant filed a motion for continuance which was overruled by the court. Error is pred-icated on this ruling.  The only material recital in said motion

1. CRIMINAL LAW: continuance: in-adequate time to prepare for trial.

as a ground for continuance is:

"That it is markedly unfair to defendant to be forced to trial before he or his counsel, who has been appointed by the court to defend him, have sufficient time to adequately prepare his defense."

Our criminal code provides that as soon as practicable after an indictment is found, the defendant must be arraigned thereon, unless he waives the same. Code Section 5310.  The defendant shall, if he demands it upon entering his plea, be entitled to three days in which to prepare for trial.  Code Section 5370.

In the instant case 13 days intervened between his plea and the commencement of the trial.  This afforded him reasonable opportunity to procure his witnesses and stand prepared for trial.  It rests with the trial court in the exercise of sound dis-cretion to fix the time during the term when a defendant shall be put upon his trial, and unless there is a clear showing of abuse of discretion and resulting prejudice, this court will not

interfere. *State v. Maher*, 74 Iowa 77. A trial judge should be commended, rather than criticised, in his effort to secure speedy trials on indictments returned to his court.

2.   Prior to impaneling the jury in the instant case, the defendant filed written objections by way of "challenge to the jury lists, the panel and the jury." The challenge was predicated upon the following grounds:   (1) That the jury list contained names of judges of election who had placed their own names thereon. (2) That the jury and talesmen's lists were not prepared and certified as required by law.   (3) That names were included by the county auditor on the jury list which were not certified by the judges of election as required by law.   (4) That said jury lists and the panel are composed of the names of men and women indiscriminately, contrary to law.

2. JURY: jury list: insertion of names by auditor.

All the provisions of law relating to challenges to the panel of trial jurors in civil procedure, including the grounds therefor, the manner of exercising the same, and the effect thereof, apply to the panel of trial jurors in criminal causes, and the same rules for the drawing of the jury are applicable in criminal, as in civil causes. Code Sections 5358 and 5356. A challenge to the panel can be founded only on a material departure from the forms prescribed by law in respect to the drawing and return of the jury, and such challenge must be in writing, specifying the facts constituting the ground of challenge. Code Sections 3679 and 3680. If the challenge is sustained by the court the jury must be discharged; if it is overruled the court shall direct the jury to be impaneled. Code Section 3682. It is also competent upon a challenge to the panel to examine any person as a witness, or any judicial or ministerial officer whose irregular or illegal act is the subject of complaint. Code Section 3681.

The defendant in support of his challenge and objections called as witnesses the county auditor, the county clerk, and one of the judges of the election board of the 5th ward of Webster City, Iowa. Their testimony discloses that Charles Lacy was one of the election judges; that his name was one of the names returned for the petit jury list, and that he put his own name on the list, as returned from the 5th ward of Webster City, Hamilton County, Iowa; that in the poll books returned from Ells-

worth Township in said county, there were no names returned in the place designated in said book for the petit jury list, but in making up the complete jury list the county auditor took the names from another place in said book; that the judges of election of Hamilton Township failed to certify the petit jury list in the poll book; that this is also true as to the return made by the judges of election of Scott Township; that in both of these instances the county auditor added names that were uncertified in the poll books on the complete jury list of Hamilton County; that at least 25 names of women were returned and certified on the petit jury and talesmen's lists; that the name of one woman was on the panel of the jury at the trial term.

This court is committed to the doctrine that slight deviations from the statutory method of selecting jurors do not constitute prejudicial error. *State v. Clark*, 141 Iowa 297. In the light of the instant record, were the material provisions of the Code in the drawing and certifying of jurors, or in the preparation of the jury list substantially observed? Section 337 Code Supplement 1913, constitutes the authority to the judges of election in the preparation and certification of jury lists, and although its provisions are construed as directory, a substantial compliance therewith is required. *State v. Wilson*, 166 Iowa 309.

The name of no person, who has served as judge or clerk of the general election in the year in which said jury list is prepared, shall be returned and the members of the election board shall certify to the lists of grand and petit jurors and talesmen, and shall state that the lists do not contain the name of any person who requested, directly or indirectly, that his name appear thereon, and that it does not contain the name of anyone who served as judge or clerk at such election. If the name or names of such persons are returned, such fact shall be a ground for challenge for cause. Code Section 337.

We find no authority in our statute which will warrant the county auditor placing names on the jury list taken at random from returned uncertified poll books. This is the function of the board of supervisors. The action of the county auditor was a material departure from statutory provision, and the challenge entered by the defendant in this particular was sufficiently supported and should have been sustained by the trial court.

The fourth ground of challenge presents a new question to this court: *Are women competent and eligible to act as jurors under the Constitution and statutes of Iowa?* This question speaks its own importance, but it can be fully

3. Jury: qualifications: women as qualified jurors.

answered by the consideration and the application of the Nineteenth Amendment to the Constitution of the United States in its relation to the Constitution and statutes of Iowa.

This amendment as adopted August 26, 1920 and as declared by the certification of the secretary of state reads as follows:

"The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of sex. Congress shall have power to · enforce this article by appropriate legislation."

Article 2, Section 1 of the Constitution of Iowa reads:

"Every male citizen of the United States, of the age of twenty-one years, who shall have been a resident of this state six months next preceding the election, and of the county in which he claims his vote, sixty days, shall be entitled to vote at all elections which are now or hereafter may be authorized by law."

By the inherent force of the language of the Nineteenth Amendment, as a part of the supreme law of the land, women are included and made a part of the electorate of this state, and no further legislation pursuant to this amendment is required by Congress or by the general assembly of the state of Iowa. The amendment is self-executing. The Supreme Court of the United States in construing the so-called Grandfather clause of the amendment to the Constitution of Oklahoma in its relation to the Fifteenth Amendment to the United States Constitution said:

"It is equally beyond the possibility of question that the amendment in express terms restricts the power of the United States or the states to abridge or deny the right of a citizen of the United States to vote on account of race, color, or previous condition of servitude. The restriction is coincident with the power and prevents its exertion in disregard of the command of the amendment. But while this is true, it is true also that the amendment does not change, modify, or deprive the states of their

full power as to suffrage, except, of course, as to the subject with which the amendment deals, and to the extent that obedience to its command is necessary. Thus, the authority over suffrage which the states possess and the limitation which the amendment imposes are co-ordinate, and one may not destroy the other without bringing about the destruction of both. While in the true sense, therefore, the amendment gives no right of suffrage, it was long ago recognized that in operation its prohibition might measurably have that effect: that is to say that, as the command of the amendment was self-executing, and reached without legislative action the conditions of discrimination against which it was aimed, the result might arise that, as a consequence of the striking down of a discriminating clause, a right of suffrage would be enjoyed by reason of the generic character of the provision which would remain after the discrimination was stricken out. A familiar illustration of this doctrine resulted from the effect of the adoption of the amendment on state constitutions in which, at the time of the adoption of the amendment, the right of suffrage was conferred on all white male citizens; since, by the inherent power of the amendment, the word 'white' disappeared, and therefore all male citizens, without discrimination on account of race, color, or previous condition of servitude, came under the generic grant of suffrage made by the state.''

*Guinn v. United States,* 238 U. S. 347 (59 L. Ed. 1340). See, also *Strauder v. West Virginia,* 100 U. S. 303 (25 L. Ed. 664); *Neal v. Delaware,* 103 U. S. 370 (26 L. Ed. 567); *Bush v. Kentucky,* 107 U. S. 110 (27 L. Ed. 354).

The effect, therefore, of the Nineteenth Amendment in its relation to our state Constitution (Article 2, Section 1) is to enlarge the electorate and create practical universal suffrage.

Our next inquiry is: *Does the enlargement of the right to vote as to a certain class of citizens create a like enlargement as to that class of citizens in the privileges, duties, and burdens of jury service in the courts of this state?* This question must be answered by the consideration and interpretation of the Constitution and statutes of this state governing the issue involved. Until Congress by appropriate legislation, pursuant to the provision of the Nineteenth Amendment, declares that ''no citizen, possessing

4. CONSTITUTIONAL LAW: Federal prohibition *in re* jury service.

all other qualifications which are or may be prescribed by law, shall be disqualified from service as grand or petit jurors in any court of the United States, or of any state, on account of sex,'' the state legislature is supreme in the matter of defining the qualifications of jurors, and until such time a legislature may properly and legally confine the selection of jurors to males. *Strauder v. West Virginia,* supra. The Nineteenth Amendment *per se* enlarges the electorate as to women, but it is not by reason thereof that the women of any state are under the imposition of jury service. That incident is determinable by the language of the state statute, giving, exempting, or denying it. In some states jury duty on the part of women is made compulsory; in others, it is optional, and in others women are expressly made ineligible.

5. Jury: jury service not right or privilege.

Until the privilege of jury service becomes a guaranteed right to all citizens regardless of sex, it is a duty imposed by the state, not a right. It is not a "right" of the citizen protected by either our state or Federal Constitution, nor is it implied in the right to vote or hold office.

Guaranteed rights are enjoyed by all citizens alike, but the Fourteenth Amendment does not guarantee to all citizens matters of duties as distinguished from matters of right. Duties are imposed and are intrusted by the state only to those deemed qualified for their performance, and the determination of qualifications of those performing state duties has always been considered a legislative function. The provisions of the Federal Constitution with reference to trial by jury do not govern jury trial within the state. *Hunter v. Colfax Cons. Coal Co.* 175 Iowa 245.

The right to vote and the privilege to serve as a juror are not correlative, and not necessarily coexistent or coextensive. Jury service is an obligation imposed on citizens of recognized qualifications. *Garrett v. Weinberg,* 54 S. C. 127, 144. The *sine qua non* which the state desires and demands in jury trial is service, and in the absence of constitutional limitation the legislature determines who shall render that service and what qualifications they shall possess. Whether a legislature should make any distinction as to sex in respect to the duty of citizens to serve as jurors is not a question of right, but of expediency and with this matter a court is not concerned. Age, residence,

sex, property, educational, moral or physical qualifications may be recognized and made a condition precedent to jury service if the state legislature sees fit by statutory enactment to make them so, provided there is no constitutional inhibition. Such qualifications may differ from those recognized at common law. *State v. Slover,* 134 Mo. 607; *Saginaw v. Campau,* 102 Mich. 594; *Harland v. Territory,* 3 Wash. Ter. 131; *Strauder v. West Virginia,* 100 U. S. 303 (25 L. Ed. 664).

It is competent for the state legislature to make electors eligible for jury service regardless of citizenship. *People v. Collins,* 166 Mich. 4; and may likewise impose the duty upon qualified citizens who are not entitled to vote. *State v. Fairlamb,* 121 Mo. 137. In *McKinney v. State,* 3 Wyo. 719 (April 1892) it was held that a man could not urge as an infringement of his constitutional rights, either state or Federal, the exclusion of women from the jury sitting in judgment on him. This was said under a statute limiting jury service to male citizens and in the face of a constitutional provision which reads:

"The rights of citizens of the state of Wyoming to vote and hold 'office shall not be abridged or denied on account of sex. Both male and female citizens of this state shall equally enjoy all civil, political, and religious rights and privileges."

In the absence of constitutional or statutory enactment the imposition of one duty does not carry with it another and entirely different duty, and the matter of jury service with its incidental burdens is not within the intent or purview of the Nineteenth Amendment. We are not advised that Congress has enacted legislation pursuant to this amendment.

Pursuant to the Fourteenth Amendment to the United States Constitution Congress enacted a statute approved March 1st, 1875 which *inter alia* declares:

"No citizen, possessing all other qualifications which are, or may be prescribed by law, shall be disqualified from service as grand or petit jurors in any court of the United States, or of any state, on account of race, color, or previous condition of servitude."

In construing this statute the United States Supreme Court in *Neal v. Delaware,* 103 U. S. 370 (26 L. Ed. 567) said:

"Beyond question the adoption of the Fifteenth Amendment

had the effect, in law, to remove from the state Constitution, or render inoperative, that provision which restricts the right of suffrage to the white race. Thenceforward, the statute which prescribed the qualifications of jurors was itself enlarged in its operation, so as to embrace all who, by the state Constitution, as modified by the supreme law of the land, were qualified to vote at a general election. * * * While a colored citizen, party to a trial involving his life, liberty, or property, cannot claim, as matter of right, that his race shall have a representation on the jury, and while a mixed jury, in a particular case, is not, within the meaning of the Constitution, always or absolutely necessary to the equal protection of the laws, it *is* a right to which he is entitled, 'that, in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them, because of their color.' ''

The mere fact that in the selection of jurors by the legally constituted authorities of the state no person of the colored race or no woman is selected does not constitute a prima-facie case of discrimination. This is a matter of proof.

In *People v. Barltz*, 212 Mich. 580 (180 N. W. 423) (Dec. 1920) the defendant was convicted on an indictment for larceny by a jury of eleven men and one woman. Upon the trial the accused first exhausted his peremptory challenges and then challenged the woman juror for cause on the ground that a woman was prohibited from sitting as a juror by the state Constitution in which reference to a jury of ''men'' is made. The Constitution and the statutes of Michigan in relation to the question in issue are the same in substance as the Constitution and statutes of the state of Iowa, except that Michigan amended her state Constitution giving women the right to vote. The conclusion of the Supreme Court of Michigan holding that the woman in question was a properly qualified juror under the Constitution and statutes of Michigan was based on the principle of constitutional construction that a constitution should be construed, if its language is appropriate, so that it will accomplish the purpose the people intended it to accomplish. Women on becoming electors were automatically placed in a class which made them eligible for jury duty under the Michigan statute which provided that

jurors should be selected from persons having the qualifications of electors. The same conclusion must be reached in the instant case since the Nineteenth Amendment made women "electors" by the inherent force of the amendment.

In *Commonwealth v. Maxwell*, (Pa.) 114 Atl. 825, (March 1921) the court upheld an indictment found by a grand jury of which a woman was a member. In Pennsylvania women did not have the right to vote until the adoption of the Nineteenth Amendment, and under the state statute juries were required to be selected from "the whole qualified electors of the county." It is held that the statute providing for the selection of jurors includes those who at any time 'shall come within the designation of "electors." This clearly effectuates the legislative intent to impose the duty of jury service upon those who possess the right to vote.

In the case of *In re Opinion of the Justices*, 130 N. E. 685 (March 1921) the Supreme Court of Massachusetts in a reply to an inquiry from the house of representatives held that women were not liable to jury duty. Women enjoyed the elective franchise in Massachusetts prior to the adoption of the Nineteenth Amendment. The state statutes provided: (1) That "a person qualified to vote for representatives to the general court shall be liable to serve as a juror," and (2) That a jury shall be a jury of "men." The writer is not impressed with the reasoning of the court in reaching the conclusion announced, although the conclusion may be justified under a strict literal interpretation of the word "men" under the common-law concept of "a jury." See, also, *State v. James*, (N. J.) 114 Atl. 553 (June 1921).

In *Parus v. District Court*, 42 Nev. 229 (July 1918) the petitioner was indicted by a grand jury of whom eleven members were men and the other members were women. The proceeding was in prohibition. The petitioner alleged that the indictment was invalid because under the Constitution and laws of Nevada women were not eligible to serve as members of a grand jury. The Constitution and statutes of the state of Nevada in relation to the matters in controversy are in effect the same as in the state of Iowa, except that the Constitution of Nevada gave women the right to vote. It was held that by force

and effect of the amendment, a statute confining the selection of jurors to persons possessing the qualifications of electors was enlarged in its operation so as to embrace all those who by the Constitution of the state as amended were entitled to vote. It is pointed out in this opinion that the decision of the Supreme Court of Washington in *Harland v. Territory,* 3 Wash. Ter. 131, did not turn on the question of qualified electorship, because at that time women did not possess the right to vote under the laws of Washington. In opinion the court said:

"The sole qualification for grand jurors made by our Constitution and by the laws enacted thereunder is qualified electorship; and we can do naught else than conclude that, in view of the fact that women, having been enfranchised by the amendment to our Constitution, may therefore become qualified electors, as such they are privileged to and subject to jury duty."

The writ of prohibition prayed for was denied and the proceedings dismissed.

In the case of *In re Grilli,* 110 Misc. Rep. 45 (179 N. Y. Supp. 795) (January 1920) the court denied a peremptory writ of mandamus directing the commissioner of jurors to include in the jury list every qualified woman of Kings County, New York. The judgment was affirmed by the appellate division of the Supreme Court of New York. 192 App. Div. 885 (181 N. Y. Supp. 938). The New York statute expressly provides that a juror shall be a "male citizen." The gist of the opinion and the holding thereunder finds expression in the language of the trial judge in these words:

"I can see absolutely no connection whatever between the right to vote and jury service to justify relator's claim."

In so holding the court primarily based its decision on the principle that it is the legislative function of the state legislature to define qualifications for jury service, and since the New York statute expressly limited jury service to male citizens, women could not be included therein. It will be observed that the decision in the *Grilli* case was made prior to the adoption of the Nineteenth Amendment and was predicated on the statute of New York governing jury service in relation to the amendment to the state constitution giving women the right to vote. The principle announced by the New York court is sound and in

harmony with Federal and state court decisions. See, *McKinney v. State*, supra. ·

One further question is suggested: *Is Article 1, Section 9 of the Constitution of Iowa violated in permitting women, who are qualified electors and who possess the other qualifications defined by law, to serve as jurors in the courts of this state?* The article reads as follows:

6. CONSTITUTIONAL LAW; common-law jury of men.

"The right of trial by jury shall remain inviolate; but the general assembly may authorize trial by a jury of a less number than twelve men in inferior courts; but no person shall be deprived of life, liberty, or property, without due process of law."

Section 332 of the Code of Iowa provides:

"All qualified electors of the state, of good moral character, sound judgment, and in full possession of the senses of hearing and seeing, and who can speak, write and read the English language, are competent jurors in their respective counties."

A common-law jury consisted of "twelve free and lawful men, *liberos et legales homines*" 3 Blackstone's Commentaries 352. In *Eshelman v. Chicago, R. I. & P. R. Co.*, 67 Iowa 296, we said:

"The jury contemplated by the Constitution is the jury recognized by the common law, which is constituted of *twelve persons.*"

It is the *number* that is guaranteed by our Constitution, and nowhere therein are qualifications of jurors defined or limited. The essential elements for a trial by jury at common law are number, impartiality and unanimity. 16 Ruling Case Law 181.

It is the accepted law that the legislature may fix the qualifications of jurors even though the qualifications are different from those existing at common law. A California statute (1917) authorizing women jurors was held valid. *In re Mana,* 178 Cal. 213. See also *Commonwealth v. Maxwell,* (Pa.) 114 Atl. 825; *Twining v. State of New Jersey,* 211 U. S. 78 (53 L. Ed. 97).

The common-law concept of a jury which the original Constitution-makers had in mind need not be respected in its entirety in order that "the right of trial by jury shall remain inviolate." This concept is primarily one of historical significance, and we are not bound in the interpretation of a jury under

the fundamental law of Iowa to construe the word "men" other than in its generic sense.

We hold therefore that the Nineteenth Amendment perforce extended suffrage to women in the state of Iowa, and since jury service by statute is made dependent upon the right to vote, that with the extension of the franchise to a citizen class, *ipso facto* that class is made eligible to jury service and subject to the exemptions of the law, and that no inhibition exists in the state Constitution.

The trial court correctly overruled defendant's challenge in this particular.

3.  The evidence discloses that as a result of the breaking and entering of the building in question certain automobile accessories, including casings, rims and inner tubes, were taken and carried away. Upon the trial of this cause the State offered in evidence eight exhibits consisting of automobile tires, casings and inner tubes. Neither the owner of the building nor his employee were able to identify the exhibits in question. Parkhurst testified:

7. EVIDENCE: demonstrative evidence: nonidentified property.

"The tires, casings and tubes that were on these Maxwell cars were not different than all other tires, casings and tubes of the same make. * * * I had no mark or distinct feature that I had placed on these tires and rims that were on those cars in that building, that I can positively say those are the same rims and tires."

Church, the only other identification witness, testified that these exhibits are no different than all casings, rims and tubes of the same make and character. "They are just the same as all others of the same brand."

The evidence further shows that police officer Cole of Fort Dodge, in conjunction with other officers on March 29, 1921 raided a house locally known as 700 North 1st Street, Fort Dodge, Iowa. These officers were in search of liquor and while in this house found eighteen tires, and the eight exhibits in question constituted a part of this seizure. No testimony was given by the police officers conducting this raid that the tires or casings secured were the tires and casings taken from the Parkhurst warehouse broken and entered as charged in the indictment.

Timely objection was made by the defendant to the intro-
duction of these exhibits, and subsequently to their admission
defendant moved "to strike from the record the admission of
these exhibits for the reason that they have not been properly
identified." Both the objection and the motion were overruled
by the court. Clearly this is error. The evidence tended to
prove that the tires in question were brought to Webster City
from Fort Dodge where they were taken in a liquor raid and
nothing more. They were not in any sense identified by anyone
as the stolen property from the Parkhurst warehouse, nor were
they ever shown to have been in the possession of the defendant.
See, *State v. Kehr*, 133 Iowa 35. A doubt as to the competency
of evidence should be resolved in favor of the defendant. 16
Corpus Juris 562, Section 1090.

4. The wife of this defendant took the witness stand on
his behalf and was asked on direct examination four questions
to which she answered:

8. CRIMINAL LAW:
trial: undue
cross-examination.

"(1) I am the wife of Charles Walker.
(2) My husband was home on the night of
March 18, 1921. (3) He left the next morn-
ing between 10 and 11. (4) He stayed home continually from
the time he came until 11 o'clock in the morning."

The court permitted the cross-examination to take quite a
wide range. Among other things she was asked about conver-
sations at that time with her husband, and it was elicited that
the defendant said to her that "he and Gaddis and Sigler and
Spangle and Kessler drove over in a car." The evidence shows
that some of these men had been arrested as being implicated
in the crime charged and that Gaddis turned State's evidence
and was a witness on behalf of the State on this trial. No con-
versations were inquired about by counsel for defendant upon
the direct examination, and waiving the question of privileged
communication between husband and wife as provided by Code
Section 4607, the court should have sustained defendant's ob-
jection upon the grounds urged in the objection. See *State v.
Usher*, 126 Iowa 287; *State v. Jones*, 64 Iowa 349; *State v.
Evans*, 122 Iowa 174.

5. During the argument to the jury the county attorney
said:

"Defendant by his own lips admitted he went to Fort

**9. CRIMINAL LAW: trial: argument: failure of accused to testify.** Dodge with Gaddis, Sigler, Spangle and Kessler on that night. No one has denied this."

He also said in his closing argument:

"Gentlemen of the jury, you know Charles Walker is guilty. I know he is guilty and deep down in his heart Mr. Remley knows he is guilty."

Under the interpretation of statutory rule (Code Section 5484) it is not proper in the argument to the jury to indirectly refer to the fact that the defendant has not taken the witness stand in his own behalf. *State v. Hector*, 158 Iowa 664; *State v. Trauger*, (Iowa) 77 N. W. 336.

In the first instance the county attorney referred to the incompetent statement which he had secured upon cross-examination from the defendant's wife. This language came indirectly from the lips of the defendant, but the jury must have known that it referred to the testimony of the wife. The State has the right to call the jury's attention to the fact that certain evidence is uncontradicted, even though the accused may be the only person who could have contradicted it. *State v. Hasty*, 121 Iowa 507, with cases cited. We said in *State v. Baker*, 143 Iowa 224, that this court, while strictly applying the statute in every case, has not found it necessary to reverse because of the possibility of remote inferences. See also *State v. Kimes*, 152 Iowa 240; *State v. Krampe*, 161 Iowa 48.

The language of the county attorney in his reply argument has been the subject of criticism by this court, but in *State v. Nagel*, 185 Iowa 1038, similar language was held not sufficient ground for a reversal. We do not approve of the language used by the county attorney in this case, and a note of warning should be sounded occasionally that prosecutors may keep within the limitations defined by Code Section 5484. The argument in this case to which exception is taken is dangerously close to the border line.

6. Numerous objections were lodged against the instructions given by the court and errors are assigned

**10. CRIMINAL LAW: trial: instructions: different degrees of proof.** thereon. In Instruction 6 the court defined the essential ingredients of the crime and charged that said breaking and entering must

have been committed by defendant "with the specific intent to commit therein the crime of larceny," and that this allegation of the indictment must be established by the State beyond a reasonable doubt in order to warrant a conviction of the defendant. This is a correct statement and exposition of the law in this particular. The essence of this instruction was repeated in Instruction 7. In Instruction 9 the court in further explanation and definition of "intent" correctly defines the term, and states that the intent may be established by circumstantial evidence. This is also correct. The instruction then reads "direct proof is not necessary to show intent, but the circumstances shown should be such as would fairly lead to the conclusion that the intent was present when the act of which complaint is made was committed."

This is not the correct test and the language used not only minimized the quantum of proof, but contradicts the instruction correctly given in No. 6. Who may say that the jury did not adopt the erroneous instruction instead of the correct rule? We hold that the language of the instruction, "as would fairly lead to the conclusion," "from the circumstances shown that throw light upon that question" constituted error.

In Instruction 7 the court reiterates part of the essential elements of the crime charged and in the concluding paragraph thereof says:

11. CRIMINAL LAW: trial: instructions: partial proof permitted. "If you find the State has proven these two propositions, each and both of them beyond a reasonable doubt, and also proven that said offense was committed in Hamilton County, Iowa within three years prior to April 28, 1921, then the defendant's guilt has been established and you should return a verdict of guilty."

The objection made involves more than verbal criticism. In Instruction 6 the jury is told that there are four things which the State must establish beyond a reasonable doubt, and in the next instruction the jury is told that two propositions are necessary to be established.

We cannot justify an alternative instruction in a case of this character. These instructions are contradictory and would tend to mislead the jury. Instructions on so vital a proposition must be in harmony and consistent each with the other. We

would suggest to trial courts in the giving of instructions that it is sufficient to clearly and correctly state the law on any proposition involved in the case in one instruction. Repetition may lead to confusion and contradiction. See *State v. Glaze,* 177 Iowa 457.

It is also urged that Instruction 12 is erroneous. It is not proper for a court to particularize, single out, or emphasize some one fact disclosed by the testimony. In this instance the

**12. CRIMINAL LAW: trial: instructions: undue emphasis.** court instructed that the fact, ''if it be the fact, that the defendant Walker, with the others, was with and' accompanied the said Gaddis on the trip to Fort Dodge Iowa'' is a material fact, which it is proper for you to consider as tending to connect the defendant with the commission of the crime charged. The court is limited to a statement of the law of the case, and to accentuate or emphasize a single fact as was done in this instruction is not approved. *State v. Kehr,* 133 Iowa 35. For the reasons stated this cause is—*Reversed and remanded.*

EVANS, C. J., WEAVER, STEVENS, ARTHUR, and FAVILLE, JJ., concur.

PRESTON, J., dissents as to Division 4 of the opinion.

PRESTON, J. (specially concurring.) I agree in the result. I agree that women are competent jurors. I agree that, in this case, the jury was not properly drawn. I do not agree with Division 4 of the opinion, and shall very briefly state my reasons.

The evidence brought out on cross-examination on the part of defendant's wife may have been improperly used in argument, as the opinion holds, but I think it was proper cross-examination, to identify the time. Defendant's wife was attempting to establish an alibi for her husband, by showing that he was at home that night. This is a defense easily manufactured. *State v. Rowland,* 72 Iowa 327. People are often mistaken as to dates. Under such circumstances, I think some latitude was allowable on cross-examination. Had there been a wedding that night at the place where defendant's wife was staying, it would have been proper to show that, as fixing the

date. What were they doing? What were they talking about? How did she claim to know what was the date? She says it was because he came home with certain persons.

EVANS, C. J., concurs in the dissent.