## HOWARD v. UNITED STATES.

Court of Appeals of District of Columbia.
Submitted April 3, 1928. Decided
May 7, 1928.

No. 4688.

1. **Criminal law** ☞1030(2)—**Challenge to constitutionality of law relative to qualifications of jurors held too late on appeal (Act Feb. 26, 1927 [44 Stat. 1249]).**

Challenge to constitutionality of Act Feb. 26, 1927 (44 Stat. 1249), providing that no person shall be disqualified for service as juror by reason of sex, but that such service shall not be compulsory on any woman, *held* too late when made for the first time on appeal.

2. **Criminal law** ☞1035(5)—**Challenge to qualification of juror on ground husband was deputy marshal held too late on appeal.**

Challenge to qualification of juror on ground that her husband was a deputy marshal *held* too late when made for the first time on appeal; no fraud being apparent in juror's reply that she was not acquainted with members of police force.

3. **Witnesses** ☞305(2)—**Defendant, by making himself witness, waived constitutional privilege, and was liable to cross-examination.**

Defendant, in prosecution for murder by making himself a witness, waived his constitutional privilege, and was liable to be cross-examined with same latitude as was exercised in case of ordinary witness.

4. **Criminal law** ☞1170½(5)—**Use of written statement previously excluded in framing questions for cross-examination of defendant held immaterial.**

Where defendant in prosecution for murder by making himself a witness waived his constitutional privilege, and was liable to be cross-examined, the fact that counsel, in framing questions on cross-examination, used written statement previously excluded *held* immaterial, particularly where police officers had already testified without objection to statements therein.

Appeal from the Supreme Court of the District of Columbia.

Malcomb Howard was convicted of murder in the first degree, and he appeals. Affirmed.

Abner Siegal, of Washington, D. C., for appellant.

Peyton Gordon and J. W. Fihelly, both of Washington, D. C., for the United States.

Before ROBB and VAN ORSDEL, Associate Justices and SMITH, Judge of United States Court of Customs Appeals.

ROBB, Associate Justice. Appellant was convicted in the Supreme Court of the District of murder in the first degree, and sentenced to death by electrocution.

The evidence indicated that for several years he had sustained meretricious relations with Jessie Nelson, the woman he killed. About two weeks prior to the murder he had threatened to shoot her; and on another occasion, about a week before the shooting, he again threatened to kill her. On the night of February 4, 1927, the deceased was staying with her sister, "Margie" Stewart, at 2351 Sherman avenue, in this city. Appellant went there and entered into general conversation with those present, including the deceased. Finally all left the room but the deceased and appellant. Later deceased was heard to say, "Ah, no, no, Malcomb;" and

appellant, "Do you mean it?" Deceased then screamed, and shots followed. The sister, Margie, who was upstairs, ran down, and appellant called to her to "go back!" Deceased was lying on the floor, apparently dead. Appellant pointed the gun directly at her head and chest, and fired three more shots, after which he stepped over the body and ran out of the door. Courtney A. Stewart, who, with his wife, was upstairs at the time the shooting commenced, reached the scene just as appellant was running out of the door. Appellant remained in hiding for several days, and then gave himself up.

Two police officers, witnesses for the government, testified to a conversation had with appellant shortly after his arrest. According to the statement then made by appellant, he and the deceased were having an argument, when Margie came downstairs and told him to get out; that he then fired several shots at Margie, deceased, and himself; that after the shooting he ran out the door, threw the gun away on a vacant lot on Eighth street, and finally got worried and gave himself up. The officers further testified that after the verbal statement was made they took down a typewritten statement, which they read, to appellant, and which he said was all right so far as it went. He did not sign the statement, and the court excluded it as evidence.

Appellant took the stand in his own behalf, and testified that the shooting was accidental, and that he had told the police officers the same story he was telling in court. He admitted that he had been convicted of grand larceny and sentenced to a term of five years in the penitentiary, and that he also had been convicted of petty larceny.

On May 5, 1927, there was served upon appellant a complete list of the names and addresses of jurors and of witnesses. Section 1033, R. S. (18 USCA § 562), requires such a list to be served at least two entire days before trial. The trial in this case commenced May 9, 1927, when two women, who had just previously served on another jury, were called, and, with other jurors, were examined on their voir dire. Counsel for appellant, among other questions, asked, "Are any of you acquainted with the members of the police force here?" and received negative answers. The government exercised one peremptory challenge; appellant none. The jury then was sworn, and the trial proceeded.

After verdict, the constitutionality of the Act of February 26, 1927 (44 Stat. pt. 2, 1249), was challenged as class legislation. It also was contended that, because one of the jurors was the wife of a deputy United States marshal, she was not qualified to act as a juror.

The Act of February 26, 1927, provides that no person shall be disqualified for service as a juror by reason of sex, but that such service shall not be compulsory on any woman.

Counsel for the government contend that the optional provision in this act is reasonable, that it applies generally to all within the class, and that therefore it was within the power of Congress to enact. Counsel point to the fact that several states have enacted similar statutes, and cite State v. Walker, 192 Iowa, 823, 830, 185 N. W. 619, Parus v. District Court, 42 Nev. 229, 241, 174 P. 706 (4 A. L. R. 140), and State v. Chase, 106 Or. 263, 269, 211 P. 920, 922, where the court said: "The claim that the statute is in violation of the Constitution is not predicated upon the argument that it is unconstitutional to permit women to sit upon juries, a practice not now unusual in several of the states, but it is claimed that by allowing women summoned to serve upon the panel to decline such service, making it thereby optional with the person served to attend or not, the enactment of 1921 destroys the compulsory nature of jury duty and in some way not clearly explained by counsel deprives a party of a fair and impartial jury. * * * The right of a defendant is to have a fair and impartial jury, and if the statute gives him this, he has no reason to complain if it permits women to excuse themselves from service. From their physical constitution as well as from the nature of their duties and occupations, women have many reasons for not wishing to serve or being required to serve upon juries, which do not apply to male jurors, and some of these are such as a delicate woman would hesitate to specify in court or even to a judge."

[1] But we do not deem it necessary further to consider this question, for in our view the contention came too late.

In United States v. Gale et al., 109 U. S. 65, 3 S. Ct. 1, 27 L. Ed. 857, the court held that, where a defendant pleads not guilty to an indictment, and goes to trial without making objection to the mode of selecting the grand jury, the objection is waived, even though a law unconstitutional, or assumed to be unconstitutional, may be followed in making the panel. As the court observed, "It would be trifling with justice, and would render criminal proceedings a farce, if such objections could be taken after verdict."

In Alexander v. United States, 138 U. S. 353, 11 S. Ct. 350, 34 L. Ed. 954, where, after

conviction, it was sought to challenge the method pursued by the court in impaneling the trial jury, the court said: "It is the duty of counsel seasonably to call the attention of the court to any error in impaneling the jury, in admitting testimony, or in any other proceeding during the trial by which his rights are prejudiced, and in case of an adverse ruling to note an exception."

In Kohl v. Lehlback, 160 U. S. 293, 16 S. Ct. 304, 40 L. Ed. 432, it was held that the disqualification of a juror on account of alienage is only cause of challenge, which may be waived, either voluntarily, or through negligence, or through want of knowledge. In that case, the court cite with approval Wassum v. Feeney, 121 Mass. 93, 23 Am. Rep. 258, where the court said: "A verdict will not be set aside because one of the jurors was an infant, where his name was on the list of jurors returned and impaneled, though the losing party did not know of the infancy until after the verdict."

Thompson v. Utah, 170 U. S. 343, 16 S. Ct. 620, 42 L. Ed. 1061, relied on by appellant, is not in point. The question in that case was whether the provision in the Constitution of Utah providing for a jury of eight persons in courts of general jurisdiction, except in capital cases, could be made applicable to a felony committed within the limits of the state while it was a territory without bringing that provision into conflict with the clause of the Constitution of the United States prohibiting the passage by any state of an ex post facto law. The defendant there had been tried by a jury of eight persons, while, as the court held, the supreme law of the land required that he should be tried by a jury composed of not less than twelve persons. Here the jury was composed of twelve persons, and the objection was to the qualifications of particular jurors.

[2] The second contention, as to the disqualification of the juror whose husband was a deputy marshal, also is without merit. This juror was not guilty of fraud in failing to mention that her husband was a deputy marshal when the panel was asked whether any one of its members was "acquainted with the members of the police force here." The jurors undoubtedly understood that the question related to the members of the metropolitan police, and not to deputy United States marshals. No fraud being apparent, the objecttion came too late. Kohl v. Lehlback, 160 U. S. 293, 16 S. Ct. 304, 40 L. Ed. 432; Wil-

liams v. United States (C. C. A.) 3 F.(2d) 933; Bush v. United States (C. C. A.) 16 F.(2d) 709; State v. Brown, 45 R. I. 10, 119 A. 324; State v. Carricut, 157 La. 140, 102 So. 98; Commonwealth v. Dombek, 268 Pa. 262, 110 A. 532; Jones v. State, 148 Ga. 583, 97 S. E. 621.

[3, 4] On cross-examination, counsel for the government exhibited the paper containing the statement alleged to have been made by appellant to the two officers, and inquired of appellant whether he had ever seen it. Counsel for appellant objected, and the objection was sustained. Thereupon counsel for the government asked the following question: "Howard, did you tell Jones and Smith, Officers Jones and Smith and Sergeant McGinnis, at No. 8 precinct, when they were talking to you, that you quarreled with Jessie on the evening of February 4th until about 11 o'clock?" to which appellant replied in the negative. Thereupon his counsel objected on the ground that "neither Officers Jones nor Smith made any such statement." Later the witness was asked, "Did you tell the officers at No. 8 precinct on the same night, the night of your arrest, that, after having quarreled with Jessie, that Margie came downstairs and started quarreling with you, abusing you; that Jessie joined in with her; that you lost control of yourself and started firing at Jessie, Margie, and yourself, firing four shots in all?" Counsel for appellant objected on the ground that the government was thereby getting before the jury the contents of the written statement that had been ruled out. Objection was overruled, and the witness answered in the negative. This was proper cross-examination. The defendant, by making himself a witness, waived his constitutional privilege, and was liable to be cross-examined with the same latitude as would be exercised in the case of an ordinary witness. Fitzpatrick v. United States, 178 U. S. 304, 20 S. Ct. 944, 44 L. Ed. 1078; Ellis v. District of Columbia, 45 App. D. C. 388. The fact, if it be a fact, that counsel used the written statement in framing his questions, is not material. Moreover, the police officers already had testified, without objection, to the statements made by appellant.

A careful examination of the record leaves no room for doubt in our minds that appellant had a fair trial.

The judgment, therefore, is affirmed.
Affirmed.