STATE OF IOWA, Appellee, v. ANTHONY TWINE, Appellant.

No. 40302.

DECEMBER 9, 1930.

*S. Joe Brown,* for appellant.

*John Fletcher,* Attorney-general, *Carl S. Missildine,* County Attorney, and *Alex M. Miller,* Assistant County Attorney, for appellee.

WAGNER, J.—On June 18, 1929, the grand jury of Polk County returned an indictment against the defendant, charging him with the crime of murder, alleged to have been committed as follows: That said Anthony Twine, on or about the 26th day of May, 1929, in the county of Polk, in the state of Iowa, unlawfully, willfully, deliberately, premeditatedly, and with malice aforethought, killed Frank Brown by shooting him, etc. Shortly thereafter, the defendant entered a plea of not guilty, and was tried at the September, 1929, term of the Polk County district court, and the result of said trial was a disagreement of the jury.

The shooting occurred sometime after midnight and before 3 o'clock on the morning of May 26, 1929. Both the defendant and Frank Brown, the deceased, were of African descent. The shooting occurred in the home occupied by the defendant and his common-law wife. The defendant testified, on cross-examination: ''I married here in Des Moines, by common-law mar-

riage.'' The defendant is 46, and his wife 21, years of age. It is shown that they served public suppers at their home on Saturday evenings, where rare meats, such as ground-hog and opossum, were served. In connection therewith, drinks were also served. Dancing and ''crap shooting'' were indulged in for amusement. About 9:30 on the evening of May 25th, the deceased, with one of his friends, Jake Jackson, went to the Twine home. The deceased had liquor on his person. When they arrived, they found the defendant and his wife and a white man, named McDuff. Crap shooting was engaged in by the three men, and there was a consumption of some of the liquor. McDuff became disabled from too much liquor, and was put to bed in the room next to the street, which was the second room west of the dining room, where the dancing and crap shooting took place. Brown's dog was with him, and the defendant desired that the dog leave the house. Jackson testified that, while the deceased was in the kitchen, removing the dog from the house, the defendant reached back in a trunk in a corner of the dining room and got a gun and put it inside of his shirt. The defendant claims that he got the gun from under the pillow in the adjoining bedroom. The defendant testifies:

''There was no particular argument or quarrel about the dog; everything was peaceful and quiet. I did not argue about the dog. He didn't argue about the dog.''

Jackson left the defendant's home about 1:00 or 1:30 A. M., but the deceased remained. Jackson testifies:

''Frank never quarreled with Hickory [a nickname for the defendant]. They were all right when I left there.''

The defendant testifies that Frank Schultz, one of his neighbors, dropped in for a short time, and took appellant's gun, admonishing appellant that the gun would get him into trouble. It appears that Schultz took the gun with him. Shortly after Jackson left appellant's home, two men and two women, of African descent, arrived. The new arrivals, the defendant, and the deceased engaged in dancing and shooting of dice. One of the lady visitors testified that Brown had a controversy with Twine, and ''spoke cross'' to her; that Brown pulled at her, and offered to dance, and she pushed him away, because she thought

he was too drunk to dance; that she danced with Twine; that Twine soon settled the quarrel that Brown started. None of the remaining witnesses present saw or heard any quarreling or unpleasantness. The defendant testifies that, about 1:30, he went to Schultz for the gun, and he refused to let him have it, saying, "You don't want to get in trouble,—you don't need the gun;" and that, about 2 o'clock, he sent his wife for the gun, who obtained the same, and he put it in the pocket of his pants. The defendant claims that the deceased had been threatening him with a knife. None of the witnesses present at any time during the night saw the deceased have a knife, except Jackson, who testifies:

"Frank [the deceased] took the knife out of his pocket. He broke this bottle of whisky in his pocket, and took his knife out and shut it up and put it back in his pocket. He had a big knife, with about two and one-half inch blade. The handle had kind of little notches up on the side. That was the only time I saw him have the knife."

The defendant testifies that the deceased and McDuff had difficulty in the early part of the evening; that the deceased, at that time, threatened McDuff, displaying his knife, when he intervened in behalf of McDuff, to which the deceased took exception. After the last four visitors had left, it appears that the piano player and Mrs. Twine went outside the house. The defendant testifies that, as the crowd went out of the house, he said, "Frank, you come on and go home,—I will take you home;" and that the deceased responded, "Yes, I am going home, but I am going to get even with you,—I am going to settle with you;" and that:

"As he said he was going to get even with me, he jumped up and rammed his hand into his right pocket, where I had seen him put his open knife. I told him to stop, and he didn't stop, so I shot to scare him. I didn't aim to hit him; but he kept coming, and I backed up two or three steps. He was rushing me, and I raised the gun a bit, and shot to stop him. He fell between the table and the wall."

One bullet made a wound upon the left hip of the deceased; the second entered the mouth, knocking out one of the incisors,

and entered the brain, killing him instantly. The defendant immediately took his gun to the neighbor, living in the next house east, telling him to keep it, and to call the police. When the police arrived, they found the defendant sitting in the dining room, where the body of the deceased lay. He admitted that he had shot Brown, claiming that the deceased had attacked him with a knife. The officers asked him if he had the knife, and he said, "No." A thorough search of the corpse and the premises failed to reveal the presence of a knife. When the officers asked him for the gun, he first said he had thrown it in the river, later said he had buried the gun, and finally told them that he had taken the gun to his neighbor, Buster Brown, where the gun was obtained. He told the officers that the deceased was no good; that they could leave him there in the house "until he stinks, and when he does, I will just throw some dirt over him." On the witness stand, the appellant told an elaborate story of numerous quarrels promoted by the deceased during the evening and repeated attacks made upon appellant with a knife. In this he is without corroboration. All the witnesses who were present testified that they saw no attacks whatever made by deceased. No knife has ever been found. While there may be other testimony in the record, we do not deem it necessary to set it out in greater detail.

The various complaints of the defendant will now be considered. The case was called for trial (this being the second trial of the defendant) on December 2, 1929, at which time the  defendant filed a motion to set aside the indictment, upon the ground that, before the return of the indictment, he was not given an opportunity to challenge the panel of the grand jury, and that said body which returned the indictment was not selected, drawn, summoned, and sworn as prescribed by law, for the reason that the jury commissioners who made up the list from which the grand jury panel was selected, willfully and deliberately excluded from said grand jury list the names of all negroes or persons of African descent, solely because of the race and color of said persons so excluded, thereby denying to the defendant the equal protection of the laws, in violation of the provisions of the Constitution of the United States and of the state of Iowa. The only support of the

averments of the motion are the affidavits of the defendant and his attorney. In the affidavit of the defendant, he declares that there are about 9,000 negro citizens resident in Polk County, Iowa, and that there were at least that number at the time of the general election in November, 1928; that he and possibly 3,000 or more of his race voted in Polk County at said general election; that the grand jury which considered and returned the indictment against him was composed solely of white men; and that he is informed and verily believes that, in making up the list from which said grand jurors were selected, the jury commissioners willfully, deliberately, and premeditatedly excluded all negroes. In the affidavit of the attorney, he declares that he is a resident and voter of Polk County, and has been for 27 years; that, during said period of time, he has observed the personnel of the various grand juries that have been impaneled from time to time, and that, during said period of time, no name of any negro has ever been called; ''that, because of the fact that the name of no negro was ever called on said grand-jury panel, I have made personal investigation of the cause, since there are about 9,000 negroes resident of Polk County, Iowa, about 3,000 of whom habitually vote at every general election, and have been informed and verily believe that the members of the jury commissions who make up the grand-jury list willfully, deliberately, and premeditatedly exclude from said grand-jury list the names of all negroes;'' that he has personally examined the grand-jury lists for the years 1927 and 1928 and for 1929 and 1930, and that the name of no negro appears upon said list. Said motion was resisted by the State, and was by the court overruled. No evidence other than the aforesaid affidavits was offered in support of said motion. It is the contention of the defendant that, because of the conditions complained of, there has been unlawful discrimination as against him, and that he has been denied the equal protection of the laws accorded to him by the Fourteenth Amendment to the Constitution of the United States.

Said motion was properly overruled by the court, for the following reasons: (1) It was not filed in time. (2) One or more of the elements necessary to show discrimination against

 the race of the defendant are not substantiated by any allegations of the affidavits. (3) Many of the statements contained in the affidavits are incompetent, for the reason that they are clearly hearsay, and the belief or opinion of the affiants. (4) It is apparent that no prejudice has resulted to the appellant.

The defendant entered a plea of "not guilty" immediately after the return of the indictment, and was tried thereon at the September term of the district court of Polk County. Not until the next term of court, and just prior to proceeding with the second trial, was the motion to set aside the indictment filed. The objection of the defendant was not made in time. It should have been made before pleading to the indictment. See Sections 13680, 13781, Code, 1927; *State v. Reid,* 20 Iowa 413; *Parenti v. District Court,* 198 Iowa 560. Section 13680, Code, 1927, provides:

"A defendant held to answer for a public offense may, before the grand jury is sworn, challenge the panel, only for the reason that it was not selected, drawn, or summoned as prescribed by law. A defendant indicted not having been held to answer, or having been so held after the impaneling of the grand jury, *may for the same reasons object to the panel by motion, but the right to make such motion is waived by entering a plea to an indictment.*" (Writer's italics.)

Section 13781, Code, 1927, provides:

"The motion to set aside the indictment can be made, *before a plea is entered by the defendant,* on one or more of the following grounds, and must be sustained: * * *

"7. That the grand jury were not selected, drawn, summoned, impaneled, or sworn as prescribed by law." (Writer's italics.)

It is clearly apparent, from the above-quoted sections, that the defendant, having entered a plea of not guilty, and having had one trial thereon, has waived the objection which he now seeks to make. In *Parenti v. District Court,* 198 Iowa 560, we said:

"The statute provides that a motion to set aside an indictment can be made before a plea is entered by the defendant, on one or more of the grounds therein specifically enumerated. * * * The defendant had ample opportunity before entering his plea and before trial to learn the true situation. * * * The objections were not made in time. They should have been made before pleading to the indictment."

In *State v. Reid,* 20 Iowa 413, this court declared:

"But, aside from this, the objection, in our opinion, was not taken in time. It should, at least, have been made before pleading to indictment."

In view of the aforesaid statutory provisions and our pronouncements thereon, it is quite apparent that the objection which the appellant now seeks to raise by his motion to set aside the indictment comes too late.

Moreover, Section 10842, Code, 1927, announces the qualifications for jurors, and there is no statement in the affidavits that those claimed to have been excluded from jury service are possessed of the statutory qualifications, and there is no claim by the appellant that the provisions of said statute are unconstitutional, or that the same are discriminatory as against the negro race.

Still further, the statements of the belief of the affiants are their opinion or conclusion, and what they received by information from others is hearsay, and therefore incompetent to prove the necessary elements to raise the proposition sought by the appellant. See *State v. Chamberlin,* 180 Iowa 685.

Still further, matters not prejudicing the defendant will be disregarded. See Section 14010, Code, 1927; *State v. Pierson,* 204 Iowa 837; *State v. Pierce,* 90 Iowa 506. As declared by us in *State v. Pierson,* 204 Iowa 837:

"We are required to 'examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands.' "

For the foregoing reasons, it is quite clear that the court

458

was not in error in overruling defendant's motion to set aside the indictment.

At the former trial, the defendant was represented by Howard as his attorney, who, shortly thereafter, located in Chicago. Howard had been appointed by the court to make the defense. On November 14th, Howard wrote the attorney now representing the defendant that he could not be present on the retrial of the case, and requested that Brown interview the defendant, with a view of determining whether it would be agreeable for him (Brown) to try his case. Brown interviewed the defendant, and procured his sanction for the representation by him (Brown), as attorney for the trial of the case. On November 19th, the court informed Brown that he would appoint him as attorney for the defendant, although the appointment was not actually made of record until November 26th; but at all times after November 19th, Brown understood that he was representing the defendant. Just before the commencement of the trial, the defendant filed a motion for a continuance, on two grounds, to wit: (1) Lack of time in which to make preparation for the trial; and (2) the absence of Jake Jackson as a witness, who, he alleges, is "the only living man who could corroborate defendant's story with reference to deceased quarreling with him and threatening him with a knife shortly prior to the time of the shooting of deceased by defendant." This motion was by the court overruled. Jake Jackson was not a witness at the previous trial.

There is no error at this point, for various reasons. (1) A motion for continuance is addressed in a large measure to the discretion of the court, and there will be no reversal unless it affirmatively appears that there has been an abuse of discretion. See State v. Candler, 204 Iowa 1355; State v. Levich, 174 Iowa 688; State v. Stegner, 72 Iowa 13. (2) The affidavits in support of the motion do not show "efforts constituting due diligence which have been used to obtain such witness, or his testimony." See Section 11444, Code, 1927. (3) The attorney for the defendant, in his affidavit, states that he had examined the minutes of the testimony of the said Jake Jackson, who was a witness for the State before the grand jury, and that said

minutes corroborated the claim of the defendant as to what the said Jackson would testify to if present, which minutes were attached to the original indictment on file herein, and are made a part of this affidavit; and the testimony of the said Jake Jackson, as a witness before the grand jury, on the offer of the defendant was admitted in evidence by the court. Whether said testimony was properly or improperly admitted, it is unnecessary for us to determine, and we make no pronouncement thereon. There was no error on the part of the trial court in the overruling of said motion.

One of the grounds for challenge of a trial juror is that the juror has formed or expressed such an opinion as to the guilt or innocence of the defendant as would prevent him from rendering a true verdict upon the evidence submitted  on the trial. Section 13830, Code, 1927. It is the contention of the appellant that the court erred in overruling his challenge for cause to one of the jurors, based upon the aforesaid statutory ground. On the *voir dire* examination of said juror, the following occurred:

"The Court: Mrs. Gates, from what you read and heard about the case heretofore, did you at that time form or express an opinion in any way or manner whatsoever touching the guilt or innocence of this defendant? A. I did not. Q. Is your mind entirely clear and free to sit as a juror? A. It is. Q. And render a fair and impartial verdict? A. Yes."

The court is vested with discretion in determining whether a juror is disqualified, and there is no reversible error, unless abuse of discretion is shown. See *State v. Harding,* 205 Iowa 853; *State v. Reed,* 205 Iowa 858. It is clearly apparent that there was no abuse of discretion in the instant case on the part of the trial court.

The appellant complains because the court did not withdraw from the consideration of the jury the charge of murder in the first degree and murder in the second degree, for the reason given in his brief point as follows:

"The court should not submit to the jury the question of murder, especially murder in the first degree, where the evidence is undisputed that defendant was assaulted in his own home,

under circumstances that caused him to believe that he was in danger of either losing his life or of suffering a great bodily injury.''

The entire argument of the appellant upon this proposition consists of only fourteen lines, and is virtually a repetition of the brief point quoted. It is a conceded fact that Frank Brown  is dead, and that the cause of death was a shot from a revolver in the hands of the appellant. Of course, the burden rested upon the State to prove beyond a reasonable doubt that the killing of Brown by the appellant was not done in self-defense. If it was done in self-defense, then the appellant was not guilty of murder in any degree, nor of manslaughter. The court submitted all three offenses to the jury. No exception is taken to any of the instructions given by the court. Self-defense excuses the homicide—every degree thereof. It has nothing to do with determining the degree of the homicide, as claimed by the appellant. See *State v. Castello,* 62 Iowa 404.

It cannot be said from the record that self-defense has been conclusively established. As to what took place in the dining room at the time of the shooting, there is no living witness, except the defendant himself. The credit and weight to be given to his testimony were for the determination of the jury. Whether the deceased was armed with a knife, and whether he threatened or attempted to endanger the appellant with such weapon, if any, was clearly for the determination of the jury. See *State v. Baker,* 157 Iowa 126; *State v. Clayton,* 145 Iowa 596; *State v. Christ,* 189 Iowa 474. The contention of the appellant at this point, as made in the aforesaid quoted brief point, is devoid of merit.

The appellant complains that the trial was had in part in the absence of the judge. What the appellant refers to is that the judge, during a portion of the arguments to the jury, was  in his office, within calling distance of the court room. Both the attorneys for the State and for the defendant had given their consent to this course of action by the judge. The judge was at all times in charge of the court. The appel-

lant was not deprived of any substantial right by his temporary absence. There is no showing of prejudice to the appellant because of his temporary absence with the consent of the appellant. Under such circumstances, no reversible error is shown. See *State v. Hammer,* 116 Iowa 284; *State v. McGee,* 207 Iowa 334; *State v. Van Doran,* 208 Iowa 863; *State v. Leonard,* 135 Iowa 371.

The court permitted the calling of the clerk of the grand jury as a witness in behalf of the defendant, and the reading by her, from her shorthand notes, of the testimony of Jake Jackson before said body. It appears that, during the  argument to the jury by the assistant county attorney, he had in his possession a transcript of said testimony, and the appellant's attorney objected to the reading from the same, without its introduction in evidence; whereupon, it was stipulated by counsel for the State and the defendant that said transcript be referred to as "Exhibit C," and introduced in evidence, and that the same might be permitted to accompany the jury to the jury room for their consideration. The same was properly marked "Exhibit C" by the court reporter. The record shows that, at 12:30, the jury retired to their jury room to deliberate upon their verdict. It is the contention of the attorney for the appellant that said exhibit was not given to the jury until 2 o'clock P. M., when, in the absence of the defendant, it was sent to the jury room. If his contention be true, no exception was taken or preserved as to any irregularity in the procedure. Appellant's attorney concedes that, in open court, at 2 o'clock P. M., he was informed by the court of the sending of said exhibit to the jury. The jury did not return a verdict until 4:15 of the same day. The jury had heard the same testimony from the clerk of the grand jury; they had heard it read by the respective counsel in argument; no possible prejudice could have resulted to the appellant, even if the procedure relative to the sending of said exhibit to the jury were as claimed by him. Since there was no exception to said procedure, and since it clearly appears that no prejudice could possibly have resulted to the defendant, there is no reversible error at this point. We do not determine the competency and admissibility of the testimony which was received by the court from the clerk of the grand jury as to the

testimony of Jake Jackson, nor as to the competency or admissibility of the transcript thereof, as that question is not before us.

The appellant complains of a question propounded by the State, on cross-examination of the defendant, which it was apparent was asked as the foundation for impeachment purposes. No objection of any kind to the question propounded was made, and nothing improper occurred in the rebuttal testimony offered by the State. There is no error at this point.

It is contended by the appellant that the assistant county attorney, in his opening argument and also in his closing argument, was guilty of misconduct, in that some of the remarks made constituted improper argument, prejudicial to the rights of the defendant. Time and space forbid the setting out of it in this lengthy opinion. We have read all of the same. The argument is not of an inflammatory nature, and does not go beyond the realm of proper argument. The remarks made in the closing argument are shown to have been proper response to the argument made by the defendant's attorney. There is no error at this point.

The court did not err in overruling appellant's motion in arrest of judgment.

We have carefully considered all propositions urged by the appellant for a reversal, and fail to find in the record any reversible error. The judgment of the trial court is hereby—*Affirmed.*

All the justices concur.