STATE OF IOWA, Appellee, v. ALBERT SEREG, Appellant.

No. 45546.

1106

FEBRUARY 11, 1941.

REHEARING DENIED MAY 9, 1941.

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, and John E. Miller, County Attorney, for appellee.

W. E. Giltner, for appellant.

BLISS, J.—Appellant asks for a reversal because of error of the court in overruling his motion for a new trial, based upon the absence, from the court and the county of trial, of the trial judge, from the time the case was submitted to the jury until after the return of the verdict. Because of this absence of the judge, the appellant asserts that he was denied the right to have the jurors receive additional instructions as requested by them.

This appeal is before us on a clerk's transcript of the record as provided for in subsection No. 2 of Code section 13998. The trial was begun in the forenoon of December 9, 1940, and continued until the jury was instructed and retired at 4:40 o'clock in the afternoon of the following day. Judge Daugherty had presided until the jury retired. He also overruled defendant's motion for a new trial and sentenced him, on December 20, 1940, to pay a fine of $300, and in default of payment to be imprisoned in the county jail for 90 days. He is now serving this sentence. Appeal was perfected on December 23, 1940, and the cause was advanced to the January 1941 term of this

court for submission on the 14th day of that month. It was submitted on that day. The clerk's transcript was filed with the clerk of this court on December 26, 1940. Appellant served no notice under Rule 32 of this court. Service of such notice would have automatically continued the cause to the May term, by which time he would have served his sentence. Neither did he file an abstract. But on December 28, 1940, he served and filed his brief and argument. The State has filed no answering brief and argument, but it did file, on January 13, 1941, a motion to strike appellant's brief and argument. Without passing upon the merits of that motion or the procedural point involved, we have given full consideration to the brief and argument of appellant. And even though they were stricken, it is the duty of the court, by study and research, to decide the matter upon the law and the facts according to its best judgment.

The facts with respect to the question before us appear only in an agreed statement of the facts, signed by the respective attorneys, made a part of the record, and filed in the office of the clerk of the district court. Since it is rather difficult to correctly summarize the statement, and that there may be no misunderstanding of its contents, we set it out verbatim, as follows:

"December 12, 1940.
"State of Iowa, versus Albert Sereg

"Mr. Giltner: Now on this 12th day of December, 1940, in open court, Judge Elmer K. Daugherty, who heard the evidence in this cause, being present, and the State represented by the County Attorney, John E. Miller, and the defendant represented by his attorney, who is also present; it is agreed that the record may show that the Jury at about 10:00 A. M., December 11, 1940, requested of the Bailiff that they be permitted to come into court and ask for further instructions, that request being communicated to George W. Dashiell, the said Judge Elmer K. Daugherty not being present, but then in Fairfield, Iowa, holding court. Judge Dashiell said that the Jury might be permitted to come in and make known their request for instruction, and if he thought the request was a proper one he could call Judge Daugherty in regard to the

matter; and the report of the Bailiff to the Jury being given that they would not be called in and given additional instructions at that time, the jurors gave an exclamation of 'Oh!'; whereupon the foreman asked if they could return a verdict and have it received.

"Mr. Miller: The record may further show that counsel for the defense made objection to permitting the Jury to propound their question or request to Judge George W. Dashiell under the circumstances suggested.

"Mr. Giltner: On the ground that even though Judge Daugherty should say something over the telephone, still a Judge who had not sat in the trial of the case could not be qualified to give an additional instruction.

"Mr. Miller: I would like to add to that statement that the absence of Judge Daugherty was due to the physical inability of Judge Dashiell to attend his regular term of court at Fairfield, and that it was the understanding if necessary he, Judge Daugherty, be called.

"Mr. Giltner: Judge Dashiell being one of the Judges of this Second Judicial District, and duly on the same day received at 1:50 P. M. the verdict of the jury in this cause.

"Mr. Miller: The record should further show that it was arranged and understood by the parties that when a verdict was reached Judge Dashiell was to receive the same.

"Dec. 20, 1940. Judge Daugherty states in ruling on Motion for new trial that he could have been here within one hour if he had been called."

It may be reasonably found from this statement that Judge Dashiell, whose home is at Albia, the place of the trial, was not in the best of health, and that it had been arranged between him and Judge Daugherty, who was presiding at the trial, that in order to expedite the work in the judicial district, Judge Daugherty would, upon the retirement of the jury, go to Fairfield, about 50 miles away, in the second county east, and in the same judicial district, to hold court on the following day, and that Judge Dashiell would remain at hand to receive the verdict when returned by the jury. It also appears without question that at or about the time the

jury retired, on December 10, 1940, it was agreed in a writing signed by the county attorney and the defendant's attorney that, should the jury reach a verdict after five o'clock that afternoon and before nine o'clock the next morning, it might seal it and give it to the bailiff to be retained by him until he returned it to the jury upon their reassembling the next morning at nine o'clock for return of the verdict in court. The attorney for the defendant states in argument that this is the only agreement which he made, and that he had no part in the arrangement between the two judges respecting Judge Daugherty's holding court at Fairfield, and the receiving of the verdict by Judge Dashiell, and that he was neither asked to agree, nor given an opportunity to disagree, and that the first he knew of such an arrangement was just after the jury had retired to their room to deliberate upon the verdict, when Judge Daugherty announced to the attorneys on both sides the arrangement which he had made with Judge Dashiell. It may well be that the arrangement was first made by the two judges without consultation with the attorneys, but it is apparent from the statement of defendant's attorney that he had an opportunity to object when Judge Daugherty made the announcement, and that he made no objection. We say that he had an opportunity to object because it is not apparent to us that anything or anybody prevented him from making any objection. It also appears from the statement of Mr. Miller, the county attorney, "that it was the understanding if necessary he, Judge Daugherty, be called." Whether this "understanding" was between the judges, only, or between Judge Daugherty and the attorneys, is not clear, but Mr. Miller further stated:

"The record should further show that it was arranged and understood *by the parties* that when a verdict was reached Judge Dashiell was to receive the same." (Italics ours.)

There was no objection to, or correction of this statement by defendant's attorney. It appears to us that this last statement clearly imports the intended absence of Judge Daugherty, and that the attorneys agreed that because of his absence Judge Dashiell was to receive the verdict. Under the

record, it is our conclusion that it clearly appears the defendant and his attorney knew that Judge Daugherty was going to be absent from the place of holding the trial during a part or all of the time the jury were deliberating, and Judge Dashiell was going to take his place and receive the verdict, and they consented to such an agreement.

The propositions in appellant's assignment of error may be condensed into the single statement that because of the absence of Judge Daugherty, as stated herein, there was no compliance with section 13911 of the 1939 Code of Iowa, and the appellant was thereby deprived of a substantial right and did not receive a fair trial, and is entitled to a new trial.

■ Having reached a conclusion respecting the fact of consent or waiver, excepting as to the matter of the objection of defendant's attorney to the return of the jury for further instruction, to which we will give attention hereinafter, we will discuss the effect of that consent or waiver, and the principles and authorities and the constitutional and statutory provisions bearing thereon. The reports of the courts, both state and federal, including the United States supreme court, contain numerous decisions upon similar questions and others closely akin thereto. There has been a lack of harmony, not only among the courts, but among judges of the same court. This inability of able courts and distinguished judges to see alike is not at all surprising when the nature and the importance of the matters involved is considered.

Code section 13911 provides:

"Report for information. After the jury has retired for deliberation, if there be any disagreement as to any part of the testimony, or if it desires to be informed on any point of law arising in the cause, it must require the officer to conduct it into court, and, upon its being brought in, the information required must be given as provided by law, in the presence of or after oral notice to the county attorney and defendant's counsel."

Code section 13850 provides:

"Instructions. Upon the conclusion of the arguments, the court shall charge the jury in writing, without oral explanation or qualification, stating the law of the case."

Code section 13914 provides:

"Adjournment pending deliberation—effect. While the jury is absent, the court may adjourn from time to time as to other business, but it shall be nevertheless deemed open for every purpose connected with the cause submitted to the jury until a verdict is rendered or the jury is discharged, but a final adjournment of the court discharges the jury."

Code section 12892 provides:

"Manner of punishment. No person can be punished for a public offense except upon legal conviction in a court having jurisdiction thereof."

Article III of the Constitution of the United States, in the third paragraph of section 2 of the Article, states that:

"The Trial of all crimes, except in Cases of Impeachment, shall be by Jury; * * * "

The fifth amendment to that constitution provides:

" * * * nor shall any person * * * be deprived of life, liberty, or property, without due process of law; * * * "

The sixth amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

Amendment seven provides:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, * * *"

Section 9 of Article I (Bill of Rights) of the Constitution of Iowa is as follows:

"The right of trial by jury shall remain inviolate; * * * but no person shall be deprived of life, liberty, or property, without due process of law."

Section 10 of that Bill of Rights provides:

"In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation against him, to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel."

In Bacon's Abridgment, trial by jury is referred to as one of the chief excellencies of the British Constitution. It was Blackstone, as we recall, who named it "the favorite child of the English law," and "the most transcendent privilege any subject can enjoy." Justice Story, in his Commentaries, speaks of its inestimable privilege as being "essential to political and civil liberty." Blackstone's Commentaries, that storehouse of common law, had been published about 20 years before the War of the Revolution, and Edmund Burke, in championing the cause of the colonists, referred to the fact that there were more copies of the Commentaries in the American colonies than in the British Isles. Many of the delegates to the Constitutional Convention were familiar with its contents, and when it was provided in Article III of the Constitution that "The Trial of all crimes, except in Cases of Impeachment, shall be by Jury", it was meant the jury of the common law. It will be noted that in the sixth amendment to the Constitution, it was provided that "In all criminal prosecutions, the accused shall enjoy the *right* to a speedy and public trial, by an impartial jury * * *." It has been said that the use of the word "right" in the amendment qualified the quoted provision in Article III, particularly in view of the fact that it was a later pronouncement. This was the view as expressed by the majority opinion of the United States supreme court, written by Justice Brewer in Schick v. United States and Broadwell v. United States, 195 U. S. 65, 24 S. Ct. 826, 49 L. Ed. 99, 1 Ann. Cas. 585. Chief Justice Fuller, Justices

Peckham and Brown concurred in the views expressed, and Justice Harlan dissented.

In Patton v. United States, 281 U. S. 276, 298, 50 S. Ct. 253, 258, 74 L. Ed. 854, 863, 70 A. L. R. 263, 271, the court, speaking through Justice Sutherland, with reference to the abovementioned statement in the Schick case, held that the language in the sixth amendment could not be regarded as modifying or altering the provision in Article III, and stated that:

"The first ten amendments and the original Constitution were substantially contemporaneous and should be construed in pari materia. So construed, the latter provision fairly may be regarded as reflecting the meaning of the former. In other words, the two provisions mean substantially the same thing; and this is the effect of the holding of this court in Callan v. Wilson, 127 U. S. 540, 549, 32 L. Ed. 223, 226, 8 Sup. Ct. Rep. 1301, * * *."

Prior to the decision in the Patton case, the supreme court of the United States had not passed directly upon the question of whether a defendant on trial for the commission of a crime might consent to a trial without a jury, or with a jury of less than 12. There had been dictum that he could not in Thompson v. Utah, 170 U. S. 343, 18 S. Ct. 620, 42 L. Ed. 1061. In the Patton case, the 8th Circuit Court of Appeals certified to the supreme court the question of whether a defendant in a trial for a crime involving a penitentiary sentence, begun before a jury of 12 members, could, upon one juror becoming incapacitated, consent to finish the trial before 11 jurors. A number of the state supreme courts had answered this question in the affirmative. Among the earlier of these was the Iowa court, in State v. Kaufman, 51 Iowa 578, 2 N. W. 275, 33 Am. Rep. 148, 2 Am. Cr. Rep. 626. The decision was followed in State v. Grossheim, 79 Iowa 75, 44 N. W. 541, and in State v. Browman, 191 Iowa 608, 182 N. W. 823. The State contended in the Kaufman case that the decision was tantamount to holding that if one juror might be waived, all might be waived. The court replied that it would answer this question when the time came. It came in State v. Carman, 63 Iowa 130, 134, 18 N. W. 691, 692, 50 Am. Rep. 741. In that case, the crime

charged was assault with an attempt to commit murder. The defendant waived in writing his right to a trial by jury. On appeal from conviction, he insisted that he had no power to waive the right. The court sustained his contention, basing its judgment largely upon the Code section providing that issues of fact in an ordinary proceeding must be tried by a jury, "unless the same is waived," while there is no such provision in the code of criminal procedure, but it, on the other hand, provides that "an issue of fact must be tried by a jury of the county in which the indictment is found." Justice Seevers, who wrote the opinion in the Kaufman case dissented. He insisted that the matter was not jurisdictional, and that the statute was directory only, and contended that the provision in section 9, of Article I of the Constitution of Iowa, that " 'the right of trial by jury shall remain inviolate', * * * simply means that the accused cannot be legally deprived of such right. It confers on the accused a right, but deprives him of none." There are numerous authorities which support the reasoning of Judge Seevers. There is nothing in the Constitutions of the State of Iowa or of the United States which declare an intention to deprive an accused on trial of the power to refuse to assert his constitutional right to trial by jury. The prohibition is placed upon the government and not upon him. However, the question of the inability of a defendant in a criminal case to waive a jury and try his case to the court is stare decisis in this state, as this court has followed State v. Carman, supra, in a number of cases, among them being State v. Larrigan, 66 Iowa 426, 23 N. W. 907; State v. Rea, 126 Iowa 65, 101 N. W. 507; State v. Douglass, 96 Iowa 308, 65 N. W. 151; State v. Tucker, 96 Iowa 276, 65 N. W. 152; State v. Williams, 195 Iowa 374, 191 N. W. 790; and State v. Stricker, 196 Iowa 290, 194 N. W. 60.

In the Patton case, supra, the court answered the certified question in the affirmative, and also held that there was no distinction between the effect of a complete waiver of the jury, and a consent to be tried by a less number than 12, and that both forms of waiver must be treated as in substance amounting to the same thing. In other words, that a defendant on trial, charged with either a felony or a misdemeanor, with

the consent of the prosecution and of the court, might waive a jury trial and submit his cause to the court.

There are many more courts which permit a jury waiver in misdemeanor cases than in felony cases. Some authorities hold that no authority may be found among the cases decided prior to the adoption of the Constitution of the United States, holding that there may *not* be a jury waiver in misdemeanor cases. In the Patton case, the court said, at page 309 of 281 U. S., 262 of 50 S. Ct., 868 of 74 L. Ed., 277 of 70 A. L. R.:

"We are unable to find in the decisions any convincing ground for holding that a waiver is effective in misdemeanor cases but not effective in the case of felonies."

This court has made no such distinction between misdemeanors and felonies, or other grades or degrees of crimes. State v. Tucker, 96 Iowa 276, 65 N. W. 152 (a misdemeanor); State v. Browman, 191 Iowa 608, 633, 182 N. W. 823, 834 (convicted of murder in the first degree); State v. Kaufman, supra (a non-capital felony). Neither the state nor federal constitution recognizes any such distinction.

With respect to what is a trial by jury, the court in the Patton case said, at page 288 of 281 U. S., 254 of 50 S. Ct., 858 of 74 L. Ed., 266 of 70 A. L. R.:

"* * * we first inquire what is embraced by the phrase 'trial by jury.' That it means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted, is not open to question. Those elements were: (1) That the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect to the facts; and (3) that the verdict should be unanimous."

In support of each numbered element, the court cites respectively the following cases, to wit: Thompson v. Utah, 170 U. S. 343, 350, 18 S. Ct. 620, 622, 42 L. Ed. 1061, 1066; Capital Traction Co. v. Hof, 174 U. S. 1, 13-16, 19 S. Ct. 580, 585, 586, 43 L. Ed. 873, 877-879; and American Publishing Co. v. Fisher,

166 U. S. 464, 468, 17 S. Ct. 618, 619; 41 L. Ed. 1079, 1081. These elements are all substantial rights of the accused.

When the appellant states that the deprivation of any such substantial constitutional or statutory right entitles an accused to a new trial, he states the rule too broadly.

In the Kaufman case, supra, at page 579 of 51 Iowa, 276 of 2 N. W., speaking of the Iowa Constitution, this court said:

"The Constitution provides that 'the right of trial by jury shall remain inviolate, * * * but no person shall be deprived of life, liberty or property without due process of law.' Article 1, §9, Code, 770. That the jury contemplated by the foregoing provision should consist of twelve competent persons, will be conceded. The question for determination is whether a defendant in a criminal action, with the consent of the State and court, can waive the foregoing constitutional provision and is bound thereby. The first impression would be, we think, that a constitutional provision could be waived as well as a statute. Both, in this respect, have equal force, and were enacted for the benefit and protection of persons charged with crime. If one can be waived, why not the other? A conviction can only be legally obtained in a criminal action upon competent evidence; yet, if the defendant fails at the proper time to object to such as is incompetent, he cannot afterward do so. He has a constitutional right to a speedy trial, and yet he may waive this provision by obtaining a continuance. A plea of guilty ordinarily dispenses with a jury trial, and it is thereby waived. This, it seems to us, effectually destroys the force of the thought that 'the State, the public, have an interest in the preservation of the lives and the liberties of the citizens, and will not allow them to be taken away without due process of law.' The same thought is otherwise expressed by Blackstone, vol. 4, p. 189, that 'the king has an interest in the preservation of all his subjects.' "

Sections 10 and 11 of Article I of the Constitution of Iowa provide for certain rights which are guaranteed to the accused, and yet this court has held that he may waive them. In State v. Polson, 29 Iowa 133, the right of confrontation of witnesses was held waived by consenting to the reading of the testimony in a former trial. The Code provides that a competent juror must

be able to read and write the English language, yet the defendant was held to have waived that right even though he did not know of the disqualification until after the trial. State v. Pickett, 103 Iowa 714, 73 N. W. 346, 39 L. R. A. 302. The statute requires that but one grand juror may be drawn from each township, yet in State v. Kouhns, 103 Iowa 720, 73 N. W. 353, it was held that where it does not appear from the record that the defendant did not know that two from the same township were on the grand jury, he had waived the irregularity by his plea of not guilty. See also State v. Belvel, 89 Iowa 405, 56 N. W. 545, 27 L. R. A. 846, and State v. Crisinger, 197 Iowa 613, 195 N. W. 998. In Busse v. Barr, 132 Iowa 463, 109 N. W. 920, it was held that failing to object to an indictment found by a grand jury of less than the statutory number was a waiver of the irregularity. The court saying, on page 467 of 132 Iowa, 921 of 109 N. W.:

"That constitutional provisions for the benefit of persons accused may be waived and a conviction based on such waiver will be valid, provided it is pronounced by a court having jurisdiction and duly constituted to try the case, is settled beyond all controversy."

In State v. Smith, 132 Iowa 645, 109 N. W. 115, the court stated that he would have sustained defendant's motion to dismiss for improper argument, in violation of a statutory provision, but upon defendant's statement that he would go on with the trial, the motion was overruled. Error was assigned on the ruling. This court said, on pages 649, 650 of 132 Iowa, 117, 118 of 109 N. W.:

"Accepting this as the situation, we think it must be said that the impropriety in making the statement was waived. It is well settled that as related to matters of procedure a defendant in a criminal case may waive the benefit of a statutory provision intended for the better protection of his rights. State v. Kaufman, 51 Iowa, 578; State v. Ward, 73 Iowa, 532; State v. Hurd, 101 Iowa, 391. Conceding, then, that the misconduct on the part of the county attorney, coming at the very threshold of the trial, amounted to reversible error—and that is the exact contention of appellant—he must be held to the sup-

position that the court, if given opportunity, would have sustained his motion. And manifestly enough it would be unfair to the State to permit him following a verdict to escape judgment after the fast and loose procedure of holding up the trial by a motion to discharge the jury, and then, before ruling, announcing his election to proceed, notwithstanding the error. The course pursued was the equivalent of saying: ˙Because of this error and in conformity with my motion, I am entitled to be tried before another jury; but I have concluded to forego my motion and go ahead. If I am convicted, I will then fall back on such error, and demand a new trial as matter of right.''

The definition of a jury trial as herein given carries with it the idea of the superintendence of a presiding judge throughout until its termination by the receipt of a verdict. Yet it has quite uniformly been held that the temporary absence of the judge from the courtroom during argument, with the consent of the defendant, whereby he is in position to discharge his duties effectively, may not be taken advantage of by the defendant on appeal, unless he affirmatively shows prejudice to himself because of such absence. This court has so held. See State v. Hammer, 116 Iowa 284, 89 N. W. 1083; State v. Twine, 211 Iowa 450, 233 N. W. 476.

In State v. Carnagy, 106 Iowa 483, 488, 76 N. W. 805, 806, the judge was absent from the courtroom for a time during the State's opening argument. His absence was apparently without the knowledge or consent of the defendant or his attorney. The opinion discloses nothing indicating such consent. Defendant's attorney objected to some part of the argument. Upon the judge's return, he made an entry that he could not pass upon the objection because he had not heard the argument or the objection. The defendant made no affirmative showing of prejudice, unless it was in the inability to rule on the objection. In reversing the court stated that when the absence was not affirmatively shown to have been without prejudice, it was error in itself. Justice Given dissented from this portion of the judgment. In the majority opinion Justice Ladd stressed the importance of the scrupulous observance of all trial formalities, and provisions for the protection of the accused. We are in full accord therewith. He further stated:

"In any event, the better practice requires the visible presence of the presiding judge, and that he be within hearing every moment during the actual progress of trials involving the life or liberty of those accused of crime."

While the jurors are deliberating, such attendance, of course, is not required. During such period the judge, except during the hours ordinarily devoted to sleep, proper rest, care or recreation, should keep himself reasonably available and accessible to render such proper services as the jury may within reason require. Such services may well require additional information or guidance on matters of law, evidence, or conduct of the jury, even without a statutory provision such as Code section 13911.

The questions for decision are whether the appellant by his own conduct placed himself in a position where the full benefits of the said section were not available to him, and whether having done so he is entitled to a reversal of the judgment and a new trial. As already stated, it is our finding that he consented to the absence of Judge Daugherty and to the substitution of Judge Dashiell during the deliberations of the jury and including the receipt of the verdict. It is also our conclusion that it was his right to waive the provisions of the statute, and that having done so he may not now successfully complain. He agreed to a sealed verdict and while no such verdict was returned, and the record discloses Judge Dashiell received it the next day, he makes no complaint respecting its receipt. He excepted to instructions and to the failure to give requested instructions, and also urged these errors in his motion for a new trial, but he does not raise nor argue these errors in this court. We may assume that he felt the jury was properly and fully instructed. We find no prejudicial error in the instructions. One of the purposes of section 13911, as we view it, is for the protection of the defendant. Other purposes, no doubt, are the protection of the state, and that the jurors may better perform their duties. While this latter may be for the benefit of the jurors, its primary purpose is for the protection of the defendant. If this right is not accorded him, he is the aggrieved party, and not the jury. However, it is not a jurisdictional matter, but only

a statutory right, which he need not insist upon, and which he may forego by express consent, or by conduct. It is our conclusion that he did both. There is no showing as to what the jury wished further instructions upon. No doubt the jury would have been brought into court before Judge Dashiell had defendant's attorney not objected. What they had in mind would then have been ascertained. It may have been a matter of no consequence. It may have been something upon which Judge Dashiell might have fully advised them. We cannot assume that because Judge Dashiell may not have heard the evidence, nor have been fully conversant with the case, that he could not have given the instruction requested. In any event, the defendant by his objection prevented the jury from being brought in, and from the ascertainment of their request, and the possibility of their being instructed. There was no showing of any prejudicial error. The jury returned a verdict of guilty. There is no showing by polling, or otherwise, that it was not the unqualified verdict of each juror. We do not mean that Judge Dashiell should not have insisted upon having the bailiff bring the jury in, regardless of any protest of defendant's attorney. That was a right which the jury could insist upon and with which the court should have complied. But the matter before us is not a grievance or complaint of the jury, but of the appellant. While the jury is entitled to be properly instructed, yet had the attorney for defendant requested an erroneous instruction prejudicial to his cause, which the court gave, he would not be entitled to a reversal on that account. The appellant cannot take advantage of an error, if any there was, brought about by his own conduct.

We do not commend the substitution of judges, as was done in this case. It is the general and better practice for the judge who starts a case to remain in charge of it until he receives the verdict, particularly in view of Code sections 11506 and 13911. As stated by the supreme court of Pennsylvania in Commonwealth v. Thompson, 328 Pa. 27, 28, 195 A. 115, 116, 114 A. L. R. 432, 433:

"The substitution of judges during a case should be carefully guarded and never permitted except under most extra-

ordinary circumstances, and then only when no prejudice can result to the parties.''

In State v. McCray, 189 Iowa 1239, 179 N. W. 627, the presiding judge, after the presentation of the State's case, and the defendant gave his testimony, became ill, and another judge of the district was substituted and presided until the receipt of the verdict. He also passed upon the motion for new trial. He had familiarized himself with the record. No continuance was asked, nor was request made that the witnesses retestify. The defendant, since he was charged with a felony, presumably was present. His counsel consented that trial might proceed. The court held that there was no error of which appellant could complain. Justice Salinger dissented.

Appellant cites authorities that absence of the judge from *the county* during the deliberations of the jury will vitiate the proceedings. 16 C. J. 813. As we view it, the matter of crossing a county line is not fatal, if the reasonable availability and accessibility of the judge is not unduly impaired by time or distance. Ordinarily the work undertaken, unfinished, and at hand, is the first and most important duty of a presiding judge, and he should keep himself reasonably close in time and distance to his job. Judge Daugherty said that he could have returned, if called, within an hour. Conditions may oftentimes defeat a quick return. In support of his position, the Georgia supreme court, in Malcom Brothers v. Pollock, 181 Ga. 687, 690, 183 S. E. 917, 919, said:

''Under modern convenience of communication and transportation, the judge in the case in question, though physically absent, was able to respond without unreasonable delay, if his presence were actually needed while the jury was deliberating. Indeed, it may now be possible for a judge, when summoned by telephone, to journey by automobile from a county adjoining that from which he absented himself in less time than would have been required, when the older cases were decided, for the judge to reach the courtroom from his home.''

The Oklahoma court has had the question before it in a number of cases. Interesting discussions may be found in In re

Patswald, 5 Okl. 789, 50 P. 139; Ex parte Mingle, 2 Okl. Cr. 708, 104 P. 68; Allen v. State, 13 Okl. Cr. 533, 165 P. 745, L. R. A. 1917E, 1085; Witte v. State, 35 Okl. Cr. 204, 249 P. 968; Raab v. State, 62 Okl. Cr. 361, 71 P. 2d 773. The latter case is a well-considered one. The court held that after the trial of a criminal case is closed and the jury has retired to deliberate, the trial judge has a duty to remain in the county of the trial until a verdict is returned or the jury is discharged. The judge had gone out of the county without the consent of the defendant. A conviction was reversed on that ground. The court discusses with what speed one may now travel, but holds that this does not ordinarily justify the absence of the judge in another county, while the jury is out. In that case only the bailiff was in charge of the jury.

In McKibben v. State, 187 Ga. 651, 2 S. E. 2d 101, it was held that the consent of defendant that the judge might go out of the county to his home during the deliberations of the jury was permissible and binding, and not reversible error.

A judge is, of course, an essential part of a court, and it is uniformly held that the absence of a judge in such manner as to cause him to lose all effective control of the proceedings destroys the integrity of a trial. Tunnell v. State, 24 Okl. Cr. 176, 216 P. 951. In the case before us, the essential components of a court were at all times present. The trial was at all times presided over by a judge authorized by statute (Code section 10796).

It is our judgment that under the record made the appellant has no cause to complain, and that the judgment appealed is affirmed.—Affirmed.

HALE, C. J., and STIGER, OLIVER, WENNERSTRUM, and GARFIELD, JJ., concur.