**Barbara Sue PITCHER, a minor, by her father and next friend, Arlo Pitcher, and Arlo Pitcher, Individually, Appellants,**

v.

**LAKES AMUSEMENT COMPANY, a corporation, et al., Appellees.**

No. 2–57158.

Supreme Court of Iowa.

Dec. 17, 1975.

Fitzgibbons Brothers, Estherville, and Grathwol, Ploetz, Oberhauser & Nodland, Wayzata, Minn., for appellants.

James, Greer, Hoover, Nelson & Bertell, Spencer, and Erickson, Zierke, Kuderer & Utermarck, Fairmont, Minn., for Gerald R. Anderson, d/b/a Bloomquist Bus Service, appellee.

Wilson, Rhinehart & Bikakis, Sioux City, for Lakes Amusement Co., appellee.

Pendleton & Pendleton, Storm Lake, for Cabot Welchlin, appellee.

HARRIS, Justice.

This appeal challenges the constitutionality of a procedural rule providing for nonunanimous jury verdicts. The challenge is based on Article I, § 9, of the Iowa Constitution which the trial court found was not offended by the rule. We agree and affirm the trial court.

The facts are of limited significance in determining this appeal. On June 6, 1970 Barbara Sue Pitcher, then age 12, was injured while riding on a roller coaster in an amusement park. Her father brought this action in her behalf and his own against the amusement park, a bus service which supervised the excursion group in which Barbara was a member, and a youth involved in the incident. A jury trial resulted in a verdict for defendants.

The sole issue on appeal is plaintiffs' challenge to rule 203(a), Rules of Civil Procedure, which allows nonunanimous jury verdicts. The rule provides as follows:

" * * * Before a * * * verdict [is] returned, the parties may stipulate that the finding may be rendered by a stated majority of the jurors. In the absence of such stipulation, a * * * verdict * * * may be rendered by five-sixths of the jurors. However, no * * * verdict * * * may be rendered by five-sixths of the jurors or less until the jurors have deliberated for a period of not less than six hours after the issues to be decided have been submitted to them."

It is agreed the case must be affirmed if the foregoing rule can withstand plaintiffs' claim that it violates Article I, § 9 of the Iowa Constitution. It provides: "The right of trial by jury shall remain inviolate; but the General Assembly may authorize trial by a jury of a less number than twelve men in inferior courts; * * *."

I. The provision for a five-sixths jury verdict in this state is of rather recent origin. It was included in our report to the first regular session of the 65th G.A. in 1973. Under the procedure outlined in §§ 684.18 and 684.19, The Code, we report to the legislature changes in the rules of pleading, practice and procedure. Rules so reported, together with any changes there-

after enacted by the legislature, take effect the following July 1. Under this scheme the last sentence of rule 203(a), R.C.P. was enacted by the legislature. Acts of the 65th G.A., 1973 Regular Session, ch. 315, § 4.

Background for the question presented was well described in an annotation at 47 A.L.R.3d 895, 896 (1973):

"As one legal writer [Helwig, The American Jury System: A Time for Reexamination. 55 Judicature 96 (1971)], has observed, if, only a few years ago, one were to have searched for a feature of American jurisprudence which could properly be characterized as impervious to change, he might well have selected the system of trial by jury. Already centuries old by the time the Federal Constitution was adopted, the right of trial by jury was recognized as fundamental to our system of justice in that document, as well as in the constitutions of the various states."

The essential elements in the right to a trial by jury were described by the United States Supreme Court in *Patton v. United States*, 281 U.S. 276, 288, 50 S.Ct. 253, 254, 74 L.Ed. 854, 858 (1930) as follows:

"* * * [W]e first inquire what is embraced by the phrase 'trial by jury.' That it means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted, is not open to question. The elements were: (1) That the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) *that the verdict should be unanimous.*" (emphasis added)

We approved and adopted the foregoing language verbatim in *State v. Sereg*, 229 Iowa 1105, 1115, 296 N.W. 231, 236 (1941). In *Sereg* we held the presence and superin-

tendence of a judge to be essential. Similarly we have five times held a verdict by a jury of less than 12 is unconstitutional under Article I, § 9 of our constitution. *State v. Walker*, 192 Iowa 823, 185 N.W. 619 (1921); *Kelsh v. The Town of Dyersville*, 68 Iowa 137, 26 N.W. 38 (1885); *Eshelman v. The Chicago, Rock Island & Pacific R'y Co.*, 67 Iowa 296, 25 N.W. 251 (1885); *Higgins v. Farmers Ins. Co.*, 60 Iowa 50, 14 N.W. 118 (1882); and *Cowles v. Buckman & Son*, 6 Iowa 161 (1858).

These opinions show our views on the essentials of a jury trial traditionally have echoed those of the United States Supreme Court. As we have seen, dicta in some cases indicated a nonunanimous verdict would be improper. *Walker*, supra; *Sereg*, supra. It is understandable why concepts of a jury trial under the federal and various state constitutions settled on the developed understanding of the common law. Those first called upon to interpret and constitutionally define a jury trial had recent, almost current, experience with the common law concepts on juries. These concepts had been centuries in their development.

Time has increasingly demonstrated it was illogical to freeze forever our conception of a jury trial. The features of a jury trial had been developed, not perfected. As observed by the United States Supreme Court one of the features " * * * appears to have been a historical accident, unrelated to the great purposes which gave rise to the jury in the first place. * * *." *Williams v. Florida*, 399 U.S. 78, 89–90, 90 S.Ct. 1893, 1900, 26 L.Ed.2d 446, 454 (1970).

Passing time increased the tension between the rigid and fixed definition of a jury trial and changing views on the validity of its various essentials. This tension was but one example of the broader experience in American constitutional law. From obvious necessity a carefully limited flexibility was developed in the construction of constitutions. See 16 Am.Jur.2d, Constitutional Law, § 61, pp. 234–236. Constitutions must have enough flexibility so as to

be interpreted in accordance with the public interest. This means they must meet and be applied to new and changing conditions. We eventually freed ourselves from the private views of the constitution's framers which were in many cases but accidents of history:

" * * * [I]n determining whether a provision of the Constitution applies to a new subject matter, it is of little significance that it is one with which the framers were not familiar. For in setting up an enduring framework of government they undertook to carry out for the indefinite future and in all vicissitudes of the changing affairs of men, those fundamental purposes which the instrument itself discloses. Hence we read its words, not as we read legislative codes which are subject to continuous revision with the changing course of events, but as the revelation of the great purposes which were intended to be achieved by the Constitution as a continuing instrument of government. (Authorities) * * *." *United States v. Classic,* 313 U.S. 299, 316, 61 S.Ct. 1031, 1038, 85 L.Ed. 1368, 1378 (1941).

Those interested in judicial administration have long challenged the holdings and dicta which thus froze the features of jury trial. An influential article, reflecting unusual scholarship, appeared in 1918. Scott, Trial by Jury and the Reform of Civil Procedure, 31 Harv.L.Rev. 669 (1918). Scott demonstrated the common law definition of a jury trial was a moving target.

"Perhaps the most striking phenomenon in the history of our procedural law is the gradual evolution of the institution of trial by jury. The jury as we know it today is very different from the Frankish and Norman inquisition, out of which our modern jury has been slowly evolved through the centuries of its 'great and strange career.' It is different from the assizes of Henry II., that great reformer of procedural law. It is different from the trial by jury known to Lord Coke and to the early American colonists who carried to a New World the principles of English jurisprudence. 'To suppose,' says Edmund Burke, 'that juries are something innate in the Constitution of Great Britain, that they have jumped, like Minerva, out of the head of Jove in complete armor is a weak fancy, supported neither by precedent nor by reason.' In England there has been a wonderfully steady and constant development of trial by jury from the Conquest to the present day. In this country surely it was not, by the adoption of our constitutions, suddenly congealed in the form in which it happened to exist at the moment of their adoption. The procedure of the first half of the seventeenth century or of the second half of the eighteenth century surely was not 'fastened upon the American jurisprudence like a strait-jacket, only to be unloosed by constitutional amendment.' The common-law practice described so painstakingly by the learned Mr. Tidd surely did not bodily become a part of the organic law of the United States." *Id.* 669–670.

After identifying the constitutional provisions which preserved the right to a jury trial the study pointed out:

"Two propositions are fundamental:

"First. Whatever was an incident or characteristic of trial by jury in a particular jurisdiction at the time of the adoption of the constitutional guaranty in that jurisdiction is not thereby abolished. In determining what is meant by trial by jury under the Seventh Amendment, inasmuch as the practice was different in the different colonies, the federal courts look to the common law of England rather than to the law of any particular colony; and incidents of trial by jury, known in England at the time of the adoption of the Seventh Amendment, are not done away with by its adoption.

"Second. Although the incidents of trial by jury which existed at the time of the adoption of the constitutional guaranty are not thereby abolished, yet those

incidents are not necessarily made unalterable. Only those incidents which are regarded as fundamental, as inherent in and of the essence of the system of trial by jury, are placed beyond the reach of the legislature. The question of the constitutionality of any particular modification of the law as to trial by jury resolves itself into a question of what requirements are fundamental and what are unessential, a question which is necessarily, in the last analysis, one of degree. The question, it is submitted, should be approached in a spirit of open-mindedness, of readiness to accept any changes which do not impair the fundamentals of trial by jury. It is a question of substance, not of form. * * *." *Id.* at 671.

The article then described the individual classic features of a jury trial. As to unanimity it said:

"And next it is held that a unanimous concurrence by the jurors in the verdict is an essential of trial by jury. There is no such requirement in other systems of law than the Anglo-American system. In early times there was no such requirement in the English law. The judges occasionally took the verdict of eleven, and imprisoned or otherwise punished the obstinate twelfth. But in a case in the fourteenth century such a proceeding was severely condemned, and the court refused to render judgment on the verdict, and ordered that a new jury be summoned, and the imprisoned juror discharged. By the middle of the fourteenth century the requirement of unanimity seems to have become definitely established. The orthodox method of procuring unanimity was to starve and freeze and jolt the jurors until they were all of one mind; and finally this gave way to the modern and more amiable substitute of simply tiring them into concurrence. * * *." *Id.* at 673–674.

Though valid, these challenges to the freezing of jury trial features were long in bearing fruit. Finally, in 1970, *Williams v. Florida,* supra, held the Sixth Amendment of the United States Constitution did not require twelve member juries in state courts. Although it dealt with the federal and not a state constitution the opinion at last renounced the rigidity of the fixed features of jury trial.

A re-examination of the origin of our jury trial system in *Williams* is beginning to have an impact on state courts as well. For example a statute providing for a six man jury was held not to violate the Massachusetts constitution. That constitution contained the following provision: "And the legislature shall not make any law, that shall subject any person to a capital or infamous punishment * * * without trial by jury." Massachusetts Declaration of Rights, Article XII. See *Opinion of the Justices,* 360 Mass. 877, 271 N.E.2d 335 (1971).

The movement begun in the *Williams* opinion was continued in *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). It was there held the federal constitution does not require unanimous jury verdicts in state courts. *Apodaca* overruled dicta to the contrary in *Patton v. United States,* supra.

Plaintiff's challenge is based on Article I, § 9 of the Iowa Constitution and not upon any provision in the federal constitution. It is for us to decide whether we choose a similar reinterpretation of the state provision. We of course are not bound to do so. *Advisory Opinion to Senate,* 108 R.I. 628, 278 A.2d 852, 47 A.L.R.3d 878 (1971). But, though not bound, we feel we should reinterpret the provision for the same reasons that were expressed in *Williams* and *Apodaca.*

■   Plaintiffs point to the following language in the provision: " * * * [B]ut the General Assembly may authorize trial by a jury of a less number than twelve men in inferior courts; * * *." This language provides an express variance from what were then thought to be the three essentials of a jury trial. It is suggested this expres-

sion thereby prohibits any additional variance from the common law jury. We reject the suggestion. We believe the first phrase of Article I, § 9 protects the general concept of a right to a jury trial. Reference in the provision to a jury of less than twelve immediately allowed a change in one of the essential elements as they were then understood. There is no reason to believe the allowance was intended for a limitation.

"Legislative power is deemed curtailed by implied limitations only in cases where it is clear that such a construction of the constitutional provisions involved requires such restrictions. Restraints upon legislative powers are not to be lightly inferred. The implied restriction must be one that is clearly implied." 16 Am. Jur.2d, Constitutional Law, § 230, page 481.

■ We subscribe entirely to the view expressed in *Apodaca*, supra, 406 U.S. at 410–411, 92 S.Ct. at 1632–1633, 32 L.Ed.2d at 191–192:

"'* * * [T]he essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen * * *' [quoting *Williams*]. A requirement of unanimity, however, does not materially contribute to the exercise of this commonsense judgment. * * * [W]e perceive no difference between juries required to act unanimously and those permitted to convict or acquit by votes of 10 to two or 11 to one. Requiring unanimity would obviously produce hung juries in some situations where nonunanimous juries will convict or acquit. But in either case, the interest of the defendant in having the judgment of his peers interposed between himself and the officers of the State who prosecute and judge him is equally well served."

We therefor reject and overrule our prior holdings that the jury under Article I, § 9 of the Iowa Constitution is necessarily the jury recognized at common law. *Higgins*, 60 Iowa at 51, 14 N.W. at 118; *Eshelman*,

67 Iowa at 297, 25 N.W. at 252; *Walker*, 192 Iowa at 835, 185 N.W. at 625; *Sereg*, 229 Iowa at 1112, 296 N.W. at 234. We expressly overrule any inference contained in *Walker* and *Sereg* that a unanimous verdict is an essential element of the constitutional right to a jury trial. We believe and hold Article I, § 9 protects the *right* to a jury trial and not any particular feature thereof. Cf. *Colgrove v. Battin*, 413 U.S. 149, 155–156, 93 S.Ct. 2448, 2452, 37 L.Ed.2d 522, 528 (1973). There was perhaps some anticipation of the move we take in this opinion which found expression in *Walker*, supra, 192 Iowa at 835, 185 N.W. at 625–626:

"The common-law concept of a jury which the original constitution makers had in mind need not be respected in its entirety in order that 'the right of trial by jury shall remain inviolate.' * * *."

In *Walker* we held the presence of women on a jury did not violate a defendant's right even though the common law jury was composed entirely of males.

Rule 203(a), R.C.P. does not offend Article I, § 9 of the Iowa Constitution. The judgment of the trial court is

Affirmed.

All Justices concur except RAWLINGS and MASON, JJ., who dissent.

RAWLINGS, Justice (dissenting).

Art. I, § 9, Constitution of Iowa says: "The right of trial by jury shall remain inviolate; but the General Assembly may authorize trial by a jury of a less number than twelve men in inferior courts."

We are thus called upon to evaluate Art. I, § 9, of our Constitution in light of its peculiar wording. In this regard it is to me evident the first provision thereof, quoted above, must be read in the context of the second *coordinated* condition. In other words, specific reference to permissible juries of less than 12 in inferior courts must mean there may *not* be less than 12 in any other courts.

By the same token no leave is granted to provide for other than unanimous 12 member verdicts in all cases tried to a jury in this jurisdiction, save and except those so litigated in inferior courts. See *Power v. Williams*, 53 N.D. 54, 205 N.W. 9 (1925); *In re Advisory Opinion to the Senate*, 108 R.I. 628, 278 A.2d 852, 854–859 (1970). See generally 16 C.J.S. Constitutional Law §§ 67, 70.

Implicit in the majority opinion is a holding to the effect a less than unanimous verdict will suffice in criminal prosecutions. This I cannot accept.

I submit we today impermissibly amend Article I, section 9 of our state constitution by judicial fiat.

I therefore respectfully dissent.

MASON, J., joins this dissent.